[PHILADELPHIA, FEBRUARY 18th, 1837.]

SHEWELL *against* KEEN and Another.

IN ERROR.

A legacy cannot be attached in the hands of an executor, for the debt of the legatee, by process of foreign attachment.

ON a writ of error to the District Court for the City and County of Philadelphia, the case was as follows:—

To December Term, 1832, Thomas Shewell issued a writ of foreign attachment, in case, against Standish Forde and John B. Forde: Bail, $19,000. The writ issued on the 1st of October, 1832, and was endorsed as follows:—

"Attach all and singular the messuages, lands, tenements and hereditaments, goods, chattels, rights, credits, effects and estate,

(Shewell *v.* Keen.)

real and personal, whatsoever, and wheresoever lying and being, in your bailiwick, of the defendants, and especially those which are devised to the said defendants by Sarah Forde, late of the City of Philadelphia, deceased, widow, as appears by her last will and testament, dated July the 10th, 1832, duly proved on the 14th of September, 1832, and remaining on file in the office of the Register of Wills at Philadelphia; and summon as garnishees Charles Keen and Aaron Kille, executors of said last will and testament, or any other person or persons in whose hands the same you shall find."

The sheriff returned as follows:—

"October 1st, 1832, attached as within commanded all and singular the lands, messuages and tenements of the defendants in the county of Philadelphia, and left a copy of attachment at the office of the Recorder of Deeds for the city and county of Philadelphia, and further attached all the goods, chattels, rights, estate, credit and effects of the defendants in the hands of Charles Keen and Aaron Kille, executors of the last will and testament of Sarah Forde, deceased, and summoned them as garnishees."

On the 22d of June, 1833, the plaintiff's declaration having been filed, judgment was entered against the defendant.

A writ of inquiry issued to September Term, 1833, to which the sheriff returned, that the inquest had assessed the damages at $11,573 39.

The plaintiff then issued a *scire facias* against the garnishees on the 26th of September, 1833, returnable to December Term, 1833; and in March, 1834, filed the following interrogatories to be put to the defendants, according to the act of assembly.

"Interrogatory 1. Do you know the abovenamed John B. Forde and Standish Forde? How long have you known them, or either of them?

Interrogatory 2. Had you, or either of you, on the 1st day of October, A. D. 1832, the date of the service of the foreign attachment in this case, or have you or either of you since that time, had in your possession, keeping, care, control, management or direction, any goods, wares, merchandise, moneys, property, credits, rights or effects of any kind or description, or any legacies, moneys, property or things devised, belonging, coming or appertaining to the said John B. Forde and Standish Forde, or either of them, or to which they are or were in any manner entitled, and which of them? If yea, how much; annex a proper account or exhibit to your answer hereto, and answer fully and at large. _

Interrogatory 3. Had you, or either of you, on the said 1st of October, A. D. 1832, or have you or either of you since, as executors of Sarah Forde, deceased, received or had possession of any property, moneys, effects or things, or had any control over the same, which, by virtue of the last will and testament of said Sarah Forde, deceased, belonged to the said John B. Forde and Standish Forde, or either of them, and which of them, or to which they were in any manner entitled, or had any interest therein? Answer fully, and at large; and if affirmatively, annex statements or exhibits of amounts and facts in full.

Interrogatory 4. Are all the debts due by the estate of Sarah Forde, deceased, of whose last will and testament you are the executors, fully paid and discharged? Has the general account of your administration of said estate been duly settled and confirmed? Annex copies of the same, and answer fully and at large.

Interrogatory 5. Do you know of any other matter or thing material to the plaintiff in this case?" &c.

On the 7th of April, 1834, the following answers were filed.

" 1. To the first interrogatory they answer and say: That they have been partially acquainted with John B. Forde and Standish Forde for several years, but the precise period they are unable to state.

2. To the second interrogatory they answer and say: That in their individual capacities they had not, nor had either of them any, either on the 1st of October or since.

3. To the third interrogatory they answer and say: Yea, that they, as executors of Sarah Forde, deceased, had, on the 1st day of October, 1832, and since, the possession and control of the property and effects left by her, in which the said John B. Forde and Standish Forde were interested; they being each entitled under the will to one-sixth part of the residue and remainder of the estate, after the payment of debts and funeral expenses, and certain legacies; two notes due by Standish Forde to the estate, amounting to $1406 23, with interest on them, to be deducted from Standish Forde's share. The statement annexed, marked A., shows the property belonging to said estate, on hand on the 1st of January, 1834, when distribution was made to the other legatees; and the following property and effects were retained in their hands as executors, as and for the shares of the said John B. Forde and Standish Forde, viz.: A bond and mortgage given by Samuel Stevenson to the said executors for $1000; a bond and mortgage given by Adam Hoffman to the said executors for $400; seven shares of Commercial Bank stock; four shares of Farmers and Mechanics' Bank stock; two shares of Mechanics' Bank stock, and $1165 62 in money.

4. To the fourth interrogatory they answer: Yea; that all the

debts due by the estate, so far as they have come to their knowledge, are paid and discharged. That their accounts, as executors of said estate, have been duly settled and confirmed. Copies of said accounts are annexed, marked B.

5. To the fifth interrogatory they answer: That they know nothing further material to the plaintiff in this cause, except that in December, 1832, they received from F. W. Hubbell, Esq. as attorney of Robert Sthreshley, a notice that the said John B. Forde did, on the 12th day of December, 1832, assign all his interest in the estate of the said Sarah Forde to Robert B. Sthreshley."

By the account marked A., referred to in the answer to the third interrogatory, it appeared that the amount in the hands of the executors on the 1st of January, 1834, to be divided among the legatees was $18,131 69; of which the share of J. B. Forde was $2521 94, and that of Standish Forde $863 48, after deducting the amount of his notes.

It appeared from the schedule B., that on the 18th of October, 1833, the accounts of the executors were referred, by the Orphans' Court, to auditors, who reported the balance for distribution among the legatees, to be $18,801 31.

The following is a copy of the will of Sarah Forde, which was dated on the 10th of July, 1830, and proved on the 14th of September, 1832.

"Be it remembered that I, Sarah Forde, of the city of Philadelphia, widow, &c., hereby make my last will and testament in the manner following; that is to say,

First, I will that all my just debts and funeral expenses be duly paid and satisfied.

Item; I give and bequeath to my daughter, Ann Forde, a legacy or sum of three thousand dollars.

Item; All the rest, residue, reversion and remainder of my estate, real and personal, whatsoever and wheresoever, I give, devise and bequeath in the manner following; that is to say, one full, equal, undivided sixth-part thereof unto my daughter Eleanor Hansell, her heirs, executors and administrators forever. *One other sixth-part thereof to my son Standish Forde, his heirs, executors and administrators forever.* One other sixth-part thereof to my daughter Margaret Smith, her heirs, executors and administrators forever. *One other sixth-part thereof to my son John Forde, his heirs, executors and administrators forever.* One other sixth-part thereof to my daughter Ann Forde, her heirs, executors and administrators forever; and the remaining one-sixth part thereof to my executors hereinafter

(Shewell *v.* Keen.)

named, in trust, for the use of my daughter Mary Poor, and her heirs.

Item; I nominate and appoint my friends Charles Keen, of the county of Philadelphia, and Aaron Kille, of the city of Philadelphia, executors of this my last will and testament; and for the better division of my estate among my residuary devisees and legatees, I authorise and empower them, my said executors, to sell and dispose of my real estate, and to grant and convey the same to the purchaser or purchasers thereof, his, her or their heirs and assigns forever; any thing hereinbefore contained to the contrary notwithstanding.

Provided always, and it is my mind and will, that in the distribution of my estate, my son Standish Forde shall be charged with a note given to the Insurance Company of          , indorsed and paid by me, for $616, with interest from the 26th day of May, 1827, and with another note given to me for $755, with interest from the date of this my will, and deducted from his part and share of and in my said estate."

A case was stated for the opinion of the District Court, to be considered in the nature of a special verdict, which, after setting forth the facts, concluded thus: "The question submitted for the opinion of the court is, whether the estate, goods, rights, chattels, credits and effects; or any of them, in the hands of the said defendants, under the will of the said Sarah Forde, were, at the time of issuing the attachment, properly attachable. Judgment to be given accordingly."

After argument, the District Court ordered judgment to be entered for the defendants;* to reverse which, this writ of error was sued out.

Mr. *C. Ingersoll,* for the plaintiff in error.—The question now brought up for adjudication has often been discussed, but never before decided in this court. It is believed, that the remedy by attachment has been progressively enlarged since the act of 1705, and that the reasons which led to the adoption of this remedy, in ordinary cases, apply with equal force to the case of a legacy. Lands have been held to be attachable. So an attachment will lie for damages arising *ex contractu.* The object of the legislature was to subject all property to payment of debts; and this court has, for the purpose of effecting the ends of justice, given a liberal construction to the act. *Bushel* v. *The Commonwealth Ins. Co.* (15 *Serg. & Rawle,* 173.) The words "goods and chattels" may embrace a legacy. *Dowdel* v. *Ham,* (2 *Watts,* 64.) 3 *Thomas's Co. Litt.* 293;

---

* 1 *Miles,* 186. (*Shewell* v. *Keen.*)

(Shewell *v.* Keen.)

2 *Black. Com.* 385-6. The custom of London and the law of Massachusetts respecting trustee process, differ in many respects from our law of foreign attachment, and are not to be considered as authority. 2 *Bac. Abr.* 259-60; *Picket.* v. *Swan,* (4 *Mason,* 443 ) Here the executors must be taken from their answers to the third and fourth interrogatories to have assented to the legacies. In *Ross* v. *M'Kinley,* (2 *Rawle,* 227,) Judge ROGERS suggests that a conditional verdict might be given, which would protect the executors; or the court might stay proceedings in the *scire facias,* until security, in nature of a refunding bond, was given.

Mr. *G. M. Wharton* and Mr. *F. W. Hubbell* for the defendants in error.

The attachment in this case was taken out immediately after the proof of the will; and the question now to be decided is, whether the legacy was attachable on the 1st of October, 1832; which was one year and eight months before the answers to the interrogatories. We contend that a legacy cannot be attached for the debt of the legatee; or, at all events, not until the assent of the executor has been given. In 1705, when the attachment law was passed, an action could not be brought for a legacy. It was not considered in the light of *goods. Bastard* v. *Stukely,* (2 *Levinz,* 209 ; S. C. 1 *Thos. Jones' Rep.* 130.) *Paramour* v. *Yardley,* (*Plow.* 539.) 4 *Co. Rep.* 28, *b. ; Toller on Executors,* 309, 311. By our act for the recovery of legacies, a year must elapse before suit can be brought; and a refunding bond must be given. How is this to be given by the attaching creditor? Suppose a refunding bond given, and then the defendant comes in and disproves the debt, what becomes of the bond? Are the sureties of the plaintiff to become sureties of the defendant? Has the court a right to alter the rule with respect to legatees—to give a creditor a greater right than the legatee? By the attachment, an executor is involved in litigation without his consent. Suppose the executor pleads *nulla bona* to *the scire facias,* is he to be made personally liable? Has the court a right to take away from the executor the several writs by which he is protected—as the *fieri facias de bonis testatoris,* &c. In England the point has been expressly decided. 1 *Rolle's Abr.* 551 ; *Noy,* 115 ; 1 *Chan. Cas.* 257 ; 2 *Bac. Abr.* 259 ; *Sergeant on Attachments,* 86, 193. So in other states, *Barnes* v. *Treat,* (7 *Mass. Rep.* 271.) *Brookes* v. *Cook,* (8 *Mass. Rep.* 246.) *Winchell* v. *Allen,* (1 *Conn. Rep.* 385.) *Benton* v. *Dutcher,* (3 *Day's Rep.* 436.) *Stanton* v. *Holmes,* (4 *Day's Rep.* 87.) *Welsh* v. *Gurley,* (2 *Hayw.* 334.) *Woodward* v. *Woodward,* (4 *Halsted,* 115.) The last case is entitled to weight, since the act of New Jersey is in almost exactly the same language with that of Pennsylvania.

Mr. *Miles* in reply.—A legacy is not a mere benevolence depending

(Shewell *v.* Keen.)

upon the will of the executor, but a vested right in the legatee. It is considered here as property, since it passes under the insolvent laws. There are many things which are not the subject of execution, and yet are property. *6th Report on the Civil Code*, p. 33. The acts relating to attachments are mere outlines. The courts and the practice have made them valuable. *M'Clenachan* v. *M'Carty*, (1 *Dall.* 376.) *Sugden*, 496; 4 *Co. Rep.* 65; *Loveacre* v. *Blight*, (*Cowper*, 352.) The act of 1772 differs from that of 1742, in adding the action on the case to debt, *detinue*, &c. There is a series of cases, in which the court have held that they will mould the forms of actions to effect the purposes of justice. This is a case strongly calling for the exercise of this power. The case of *Fisher* v. *Consequa*, (2 *Wash. C. C. Rep.* 384,) proves that our attachment law is applied more liberally than that of England or Massachusetts. The case in 4th *Halsted* is not applicable in this state, because there is no remedy for the recovery of legacies in the common law courts of that state—the method of proceeding being in chancery.

The opinion of the Court was delivered by

SERGEANT, J.—In every case in which a determination has taken place on the question whether a foreign attachment would lie for a legacy, it has been held that it would not; and some of these cases have occurred under statutory regulations on the subject, very similar to our own. Various reasons have been given for coming to this result; and a little reflection convinces us that the proceedings by foreign attachment, cannot be applied to the case of a legacy, without great inconvenience and manifest incongruity.

A pecuniary legacy is not a debt. It is a sum of money, payable by the executor or administrator out of the estate of the decedent, if sufficient assets remain in his hands, after discharging the debts of the deceased and other responsibilities, and provided the legatee previously complies with certain requisites, prescribed by the acts of assembly. Generally it is not recoverable at law, but is subjected to chancery jurisdiction, which treats the executor as trustee of the estate for the benefit of those interested in it. In Pennsylvania, a legacy is recoverable in a common law court, by the act of 1772, there being no court of chancery; but that act gives peculiar powers to the court; and the executor's duty is still in nature of a trust, in relation to legacies; and they are payable only on the performance of certain conditions by the legatee. He must make a previous demand, and must tender or file a refunding bond, not so much for the protection of the executor, as for the benefit of creditors who may subsequently establish claims against the estate. If a foreign attachment be permitted, by which the assets in the hands of the executor are to be eventually appropriated to the attaching creditor, the legacy may be recoverable without demand, and without filing

(Shewell *v.* Keen.)

a refunding bond. For the legatee would not be expected to give such bond, and there exists no power in the court to compel the attaching creditor to do it, or to authorise the executor to receive it from him. If the refunding bond could be given, an extraordinary result might follow. The plaintiff, before the payment of the money by the garnishee, always gives security to restore the amount received, if within a year and a day the defendant should appear to disprove the debt. If within the year and day, the defendant issue his *scire facias ad disprobandum debitum,* and succeeds, and recovers back his legacy, he then gets it without giving any refunding bond ; and the plaintiff may be compelled, in the event of new debts against the estate being afterwards established, to pay the amount a second time on his refunding bond. Such consequences evince that the process by foreign attachment cannot be harmonised with the acts of assembly concerning the recovery of legacies.

Another circumstance of weight is, that an executor or administrator is, to a certain extent, an officer of the law, clothed with a trust to be performed under prescribed regulations. It would tend to distract and embarrass these officers, if, in addition to the ordinary duties which the law imposes, of themselves often multiplied, arduous and responsible, they were drawn into conflicts created by the interposition of creditors of legatees, and compelled to withhold payment of legacies, without suit; to suspend indefinitely the settlement of estates ; to attend, perhaps, to numerous rival attachments ; to answer interrogatories on oath, and to be put to trouble and expense for the benefit of third persons, no way connected with the estate, nor within the duties of their trust. It has been decided that money in the hands of a prothonotary or sheriff cannot be intercepted by a creditor of the party entitled to it ; but it must be paid over to himself only. 1 *Dall.* 354. The case of an executor or administrator is analogous to that of a sheriff or prothonotary. He has the fund in his hands as an officer or trustee authorised by law ; and if a new party were allowed to levy on it by attachment, there would be no end of disputes and lawsuits ; and no business could be certain of ever being brought to a close within a reasonable time. It is of great importance to the interests of heirs, creditors and legatees, that the affairs of a decedent's estate be kept as simple and distinct as possible ; that its concerns be speedily closed, and the estate adjusted. It is moreover settled, that an executor cannot be sued as defendant, in an attachment by a creditor of the testator, and the goods of the testator attached to recover the debt. 2 *Dall.* 73. The reason is, that the estate of the testator ought to come into the hands of the executor, that he may administer it according to law : and pay the debts if the assets suffice ; and they ought not to be stopped, and the executor subjected to new responsibilities, by proceedings in attachment. These reasons apply with equal force to the attempt to make an executor garnishee, for the purpose of pay-

(Shewell *v.* Keen.)

ing out of the assets in his hands, the debt due to a creditor of a legatee. These funds must travel only in the path pointed out by the laws relating to decedents' estates in their various branches; and cannot be diverted out of that path, without interfering with salutary regulations, and violating some of the most important provisions of the acts of assembly.

Judgment affirmed.