STRATTON and Another *v.* HAM and Another.

The unascertained distributive shares of a decedent's estate in the hands of the executor, are *effects* liable to the process of garnishment.

APPEAL from the *Wayne* Circuit Court.

DAVISON, J.—*Ham* and *Clark*, on the 29th of *March*, 1851, sued out a writ of foreign attachment against *Benjamin* and *Samuel Hill*, for the recovery of 270 dollars. At the same time an affidavit was filed wherein it is charged that *Stratton* and *Parry* are the executors of *Robert Hill* deceased, and, as such, have the possession, control, and agency of goods, moneys, and effects of said *Benjamin* and *Samuel*, to which they are entitled as heirs of the decedent; and which goods, &c., the sheriff cannot attach by virtue of the writ of attachment, &c. Upon this affidavit a summons was duly issued and served upon *Stratton* and *Parry*, who appeared and moved the Court to quash the summons and other proceedings against them as garnishees. Their motion was overruled, whereupon they answered, admitting the death of *Robert Hill;* that they are the executors of the decedent's will; that his whole estate, both real and personal, came to their hands; and that on final settlement and distribution there would be, as they believe, due to *Benjamin* and *Samuel Hill* 400 dollars each.

Nov. Term,
1856.

STRATTON
v.
HAM.

They aver that such settlement is not made; and submit to the Court whether, until it is made, the assets are liable to attachment in their hands. Judgment by default was rendered against *Benjamin* and *Samuel Hill.* At the fall term, 1853, the case against the executors was submitted on their answer. Upon final hearing, the Court adjudged that said executors pay over into the clerk's office of the *Wayne* Circuit Court, for the plaintiffs in the attachment, whatever may be found due to said *Benjamin* and *Samuel,* on final settlement of the estate, &c., to an amount sufficient to satisfy the judgment recovered by the plaintiffs in this case, and the costs of suit; but if the amount so found due be less than such judgment and costs, then, to pay over whatever may be found due to them on such final settlement. And this order is to take effect on the final settlement of said estate, when the distributive shares under the will are fully ascertained.

Are these distributive shares, the amounts of which are unascertained, liable to the process of garnishment in the hands of the executors? This is the only question in the case. By an act relative to proceedings in foreign attachment, under which the present suit was instituted, it is provided that, "The lands, tenements, hereditaments, goods, chattels, rights, credits, moneys, and effects, of any and all persons not residents of this State, are and shall be liable for the payment of debts and other demands, by suit to be instituted by process of foreign attachment." R. S. 1843, p. 772. This seems to embrace every species of property known to the law. And when it is considered that the right of *Benjamin* and *Samuel Hill* to their distributive shares under the will is a vested interest, there seems to be no good reason why that interest should not be deemed "effects" in the hands of the executors, subject to the attachment. (1) *Fifield* v. *Foster*, 20 Pick. 67.—*Mills* v. *Marshall*, at the present term. It is, however, assumed that until the estate is settled, it cannot be known but the money may be wanted to pay debts and equalize legacies and

distributive shares; and that such shares should not, therefore, be adjudged liable to attachment until the estate was finally settled. This argument is sustained by various authorities, but they do not, in our opinion, apply to cases arising under the act to which we have referred. Here, the order of the Court is not to have effect until the estate is fully and finally settled; and it cannot, in any respect, interfere with the duties of the executors in paying debts and equalizing distributive shares. They are simply directed to pay over to the attaching plaintiff that which, in the absence of the order, they would have been bound to pay over to *Benjamin* and *Samuel Hill*. It is true, the order, in its modified form, is not such as is, in ordinary cases, rendered in courts of law: still, it is not in conflict with any established rule of practice; and an effective execution of the attachment law seems to require the rendition of orders similar to the one before us.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

*J. Perry*, for the appellants.

*O. P. Morton* and *E. Johnson*, for the appellees.

(1) In *Brooks* v. *Cook*, 8 Mass. 246, the Supreme Court of *Massachusetts* laid down the broad principle that no person deriving his authority from the law, and obliged to execute it according to the rules of law, can be charged as garnishee in respect of any money or property held by him in virtue of that authority. This was a case of garnishment of an administrator, and the decision was based upon the principle stated without reference to the statute under which the process issued. The Court added,—"We have determined this in the case of public officers, and the reason of those decisions applies with equal force to the case of an administrator." *Vide*, also, *Waite* v. *Osborne*, 11 Maine, 185.

In *Thorn et al.* v. *Woodruff et al.* 5 Ark. on p. 59, the Supreme Court of Arkansas said: "To subject executors and administrators to this process of garnishment, might destroy the whole operation and intention of our law of administrations. We are, therefore, of opinion, that an executor or administrator, as such, is not subject to garnishment." *Sed vide Adams* v. *Barrett*, 2 N. Hamp. 374; *Fitchett* v. *Dolbee*, 3 Harrington, 267; *Curling* v. *Hyde*, 10 Missouri 374; *Richards* v. *Griggs*, 16 Missouri, 416.

In *Parks* v. *Hadley*, 9 Vermont, 320, where the Probate Court had decreed that the administrator should deliver property to a female dis-

tributee of a decedent's estate, and the administrator was afterwards

summoned as garnishee of the husband of the female, REDFIELD, J. said: "The process of attachment, when made to operate upon personal property, is coextensive with that of attachment on mesne process, which is limited, of course, to the right to levy execution. Whatever property, then, is exempted from levy of execution, must, of consequence, be exempt from attachment, whether by this or the ordinary mode of process. The only object of attachment of property, in any case, is to hold it subject to the levy of execution. ☀ ☀ ☀ ☀ It would seem then, to involve a very manifest absurdity, that the property, which is confessedly not subject to the levy of execution, in the hands of the debtor himself, should be adjudged goods and chattels within the meaning of this statute in the hands of the trustee, and the latter adjudged liable to hold them in readiness for levy of execution, which is expressly prohibited by statute." The Court in this case, admitted the general principle of the exemption of an administrator from garnishment, but in view of a recent statute of that State, and of the fact that the Probate Court had decreed distribution, charged the administrator as garnishee. Touching levy of execution on property in the hands of the administrator, *vide Blount* v. *Traylor*, 4 Ala. 667; *Jewett* v. *Smith*, 12 Mass. 309.

Under a statute of *Pennsylvania* expressly authorizing the garnishment of administrators, it was held that a distributive share of personal estate could not be attached before the administrator had settled his account so as to show what was due from him to the distributee. *Bank of Chester* v. *Ralston*, 7 Barr, 482.—*McCreary* v. *Topper*, 10 *id.* 419.

"It is well settled in *England* and the *United States*, as a general proposition, that an executor cannot be held as garnishee in respect of a pecuniary legacy bequeathed by his testator. [Priv. Lond. 267.—Toller on Executors, 4th Am. ed., 478.—*Barnes* v. *Treat*, 7 Mass. 271.— *Winchell* v. *Allen*, 1 Conn., 385.—*Beckwith* v. *Baxter*, 3 New Hamp. 67.—*Shewell* v. *Keen*, 2 Wharton, 332.—*Barnet* v. *Weaver*, *id.* 418.—*Picquet* v. *Swan*, 4 Mason, 443.]" Drake on Attachment, s. 471 and note. In *Barnes* v. *Treat*, 7 Mass., 271, it was held that such a legacy in the hands of an executor is not "goods, effects nor credits," and that the same principles which exempt a public officer from garnishment apply with equal force to the case of an executor; and this without reference to whether the garnishment took place before or after the probate of the will. Drake on Attachment, s. 472.

In a similar case in *Connecticut*, where the garnishment took place after the probate of the will, and the acceptance by the executor of his appointment, the Court below instructed the jury that the executor was in contemplation of law the debtor of the defendant, the legatee, and liable to pay the plaintiff's claim out of his own estate. But the Supreme Court said: "An executor cannot be considered as the debtor of a legatee. The claim is against the testator of his estate; and the executor is merely the representative of the deceased. ☀ ☀ ☀ ☀ Nor can a person, like an executor, deriving his authority from the law, and bound to perform it according to the rules prescribed by law, be con-

sidered as a trustee, agent, attorney, or factor within the statute; and this for the best of reasons. In the common case of agents, trustees, and factors, the creditor can easily place himself in the shoes of the absconding debtor, and prosecute his claim without inconvenience to the garnishee. But such would not be the case with an executor. It would not only embarrass and delay the settlement of estates, but would often draw them from the courts of probate, where they ought to be settled, before the courts of common law, who would have no power to adjust and settle his accounts. Such an interference might produce much inconvenience, and prevent the executor from executing his office as the law directs." *Winchell* v. *Allen,* 1 Conn., 385.

The same question arose in *Pennsylvania,* in *Shewell* v. *Keen,* 2 Whart. 332, and the amount involved being large it was argued by able counsel, and received the careful consideration of the Supreme Court. The Court in this case said: "In every case in which a determination has taken place on the question whether a foreign attachment would lie for a legacy, it has been held that it would not; and some of these cases have occurred under statutory regulations on the subject, very similar to our own. Various reasons have been given for coming to this result; and a little reflection convinces us that the proceedings by foreign attachment cannot be applied to the case of a legacy, without great inconvenience and manifest incongruity.

"A pecuniary legacy is not a debt. It is a sum of money payable by the executor or administrator out of the estate of the decedent, if sufficient assets remain in his hands, after discharging the debts of the deceased, and other responsibilities, and provided the legatee previously complies with certain requisites, prescribed by acts of assembly, &c.

"Another circumstance of weight is, that an executor or administrator is, to a certain extent, an officer of the law, clothed with a trust to be performed under prescribed regulations. It would tend to distract and embarrass those officers, if, in addition to the ordinary duties which the law imposes, of themselves often multiplied, arduous, and responsible, they were drawn into conflicts created by the interposition of creditors of legatees, and compelled to withhold payment of legacies without suit; to suspend indefinitely the settlement of estates; to attend, perhaps, to numerous rival attachments; to answer interrogatories on oath, and to be put to trouble and expense for the benefit of third persons, no way connected with the estate, nor within the duties of their trust. It has been decided that money in the hands of a prothonotary or sheriff cannot be intercepted by a creditor of the party entitled to it; but it must be paid over to himself only. The case of an executor or administrator is analogous to that of a sheriff or prothonotary. He has the funds in his hands as an officer or trustee authorized by law; and if a new party were allowed to levy on it by attachment, there would be no end of disputes and law suits; and no business could be certain of ever being brought to a close within a reasonable time. It is of great importance to the interests of heirs, creditors, and legatees, that the affairs of a decedent's estate be kept as simple and distinct as possible,

that its concerns be speedily closed and the estate adjusted. It is moreover settled that an executor cannot be sued as a defendant in an attachment by a creditor of the testator, and the goods of the testator attached to recover the debt. The reason is that the estate of the testator ought to come into the hands of the executor, that he may administer it according to law, and pay the debts if the assets suffice; and they ought not to be stopped, and the executor subjected to new responsibilities by proceedings in attachment. These reasons apply with equal force to the attempt to make an executor garnishee, for the purpose of paying out of the assets in his hands the debt due to a creditor of a legatee. These funds must travel only in the path pointed out by the laws relating, to decedent's estates, in their various branches, and cannot be diverted out of that path without interfering with salutary regulations, and violating some of the most important provisions of the acts of assembly."

For the statute of *Pennsylvania* on the subject of foreign attachment, *vide* Dunlop's Laws of Penn. pp. 740-746.

Guardians occupy the same position as executors and administrators, and come within the principle laid down in *Brooks* v. *Cook, supra*; and therefore are not liable to garnishment in respect of property of their wards in their hands as guardians. Drake on Attachment, 476.— *Vide,* also, *Davis* v. *Drew,* 6 New Hamp., 399.—*Sed vide, Williams* v. *Reed,* 5 Pick. 480.

In *Garrett et al.* v. *Grout et al.,* 4 Metc. 486, where husband and wife transferred to a trustee the distributive share of the wife in her father's estate, which had been received by her guardian, and not paid over by him, and which the trustee was to collect of the guardian or of his sureties, and it was attempted to reach the property by the trustee process, the Supreme Court of *Massachusetts* said: "The debt or chose in action could not be attached in the hands of the guardian, by a creditor of the ward, by summoning the guardian in a trustee process; certainly not until there had been a settlement, a decree of the Probate Court, a demand of the balance, and a refusal of payment. In analogous cases, it has been held that where the property is in the custody of the law, that is, of an officer, whose duties are prescribed and regulated by law; such officer cannot be summoned and charged as trustee. So held with regard to a sheriff collecting money on execution. * * * * It seems, therefore, that so long as this property remained in the hands of the guardian, it could not be attached by the trustee process, as the goods, effects or credits of the ward, nor *a fortiori,* of the husband of the ward, in case of her marriage."

"The same considerations which forbid the garnishment of executors, administrators, and guardians, require that all ministerial officers, having official possession of property or money, should be exempt from that proceeding. We accordingly find that, almost without exception, the courts in *England* and this country have taken decided ground against all attempts to reach by garnishment, money in the hands of sheriffs, received and held by them in their official capacity. [1 Leonard, 30, 264;

*Margin note:*

Nov. Term, **1856.**

STRATTON
v.
HAM.

Nov. Term,
1856.

STRATTON
v.
HAM.

Priv. Londini, 265; Comyn's Digest, Attachment, D.; Bac. Abr., Customs of London, H.]

"This subject has been presented in three aspects: 1. By the levy of an execution by an officer on money in his hands collected on execution; 2. By the levy of an attachment on such money; and 3. By the garnishment of the sheriff in respect thereof. The object aimed at in each of these cases being the same, the general principles governing each are equally applicable to all, and cannot be affected by the difference in the modes of attaining the same result. Whether the proceeding be by actual levy or by garnishment, cannot change the aspect of the question, since the latter is in effect as much an attachment as the former. Hence there is no just ground for the distinction which has been made in favor of allowing the money to be reached by garnishment as a *right* or *credit* in the sheriff's hands, though held not to be attachable by levy. Obviously, if its abstraction from his custody by levy be inadmissible, the law will not tolerate its abstraction by a circuitous and less direct method." Drake on Attachment, ss. 477, 478, and note.— *Vide*, also, *Parks* v. *Cushman*, 9 Vermont, on p. 329.

In *Turner* v. *Fendall*, 1 Cranch, 117, the Court held as follows: "The general rule of law is, that all chattels, the property of the debtor, may be taken in execution. * * * * But has money not yet paid to the creditor, become his property? That is, although his title to the sum levied may be complete, has he the actual legal ownership of the specific pieces of coin which the officer may have received? On principle, the Court conceives that he has not this ownership. * * * * It seems to the Court that a right to specific pieces of money can only be acquired by obtaining the legal or actual possession of them, and until this is done there can be no such absolute ownership as that execution may be levied on them. A right to a sum of money in the hands of a sheriff can no more be seized than a right to a sum of money in the hands of any other person, and however wise or just it may be to give such a remedy, the law does not appear yet to have given it, &c.

"Considering the case, then, either on principle or authority, it appears to the Court that the creditor has no such a legal property in the specific pieces of money levied for him and in the hands of the sheriff, as to authorize that officer to take those pieces in execution as the goods and chattels of such creditor." *Vide*, also, *First* v. *Miller*, 4 Bibb, 311.

In *Winton* v. *The State*, 4 Ind. R. 321, where a sheriff was sued on his official bond for levying executions upon coin and bank notes in his hands, collected on an execution, DAVISON, J. said: "We have a statute which provides that 'upon execution, the officer may levy upon any current gold or silver coin or current bank notes, belonging to the judgment-debtor.' But it is said that the sheriff had no authority to levy on that property when in his possession—that while there it was in the custody of the law, and in point of fact did not belong to the relator." We concur in that opinion." *Wood* v. *Wood*, 4 Ad. and Ellis, N. S. 397; *Turner* v. *Fendall*, 1 Cranch, 117; *Ross* v. *Clark*, 1 Dall. 354; 6 Cowen, 494; and 2 Blackf. 363, n. 1, which last is an excerpt from Bingham on Judgments, 111, are cited.

In *Sibert* v. *Humphries*, 4 Ind. R. 481, the sheriff of *Johnson* county had collected money on an execution, and paid it to the clerk of the county, as such clerk; and the clerk, while the money was in his hands, permitted the sheriff of *Jefferson* county to levy an execution upon it;—PERKINS, J., recited the ruling in *Winton* v. *The State*, and decided that the money was, under the statute then in force, rightly paid to the clerk, "and when he received it he and his sureties *became liable to the execution-plaintiff for the amount;*" but that "the articles which the clerk had accepted, and might be willing to retain, *would not become the property* of the execution-plaintiff till he had accepted them, and hence, would not, till after acceptance, be subject to.execution as his property."

In *Dawson* v. *Holcombe*, 1 Ohio, (*Hammond*) 275, it was held that a sheriff could not levy an attachment on money in his possession collected by execution. The Court said, "While the money remains in the hands of the officer, it is in the custody of the law. It does not become the property of the judgment-creditor till it is paid over, and consequently it is not liable to be attached as his. The writ of attachment could not supersede the execution, or release the sheriff from a literal compliance with its command, which required him to bring the money into court, so that it might be subject to their order. * * * * A strong argument might be drawn from the mischievous consequences which would follow such a course of practice. It would lead to endless delay and vexation. One attachment might follow another, till the whole demand was absorbed in cost." *Vide*, also, on this point, *Dubois* v. *Dubois*, 6 Cow. 494; *Prentiss* v. *Bliss*, 4 Verm. 513; *Reddick* v. *Smith*, 3 Scam. 451; *Crane* v. *Freese*, 1 Harrison, 305.

Nor can money so held by a sheriff be reached by garnishment. In *Wilder* v. *Bailey*, 3 Mass. 289, where a sheriff had collected money under an execution, and before the return day of the writ, he was garnished under a foreign attachment against the execution-creditor, the justices of the Supreme Court of *Massachussetts* held as follows: PARKER, J. "When an officer receives money upon an execution, the law prescribes his duty in relation to it. He is not bound to pay it over to the creditor until the return-day of the execution. From his receipt of it until that day, it is not the creditor's money, but is in the custody of the law." SEWALL, J. "I consider the statute giving this process of foreign attachment as a very beneficial one, and am therefore for applying a liberal construction to it. But there must be bounds to this liberality. In the case before us, an officer, in the execution of a precept of the law, has received money, for which he is accountable to a third person. An attempt is made to interrupt the execution of the precept, and to divert the money from the course which the law prescribed. If such practice should be permitted, great inconvenience and mischief would be the consequence." SEDGWICK, J., after giving reasons why the statute should be strictly construed, and deciding that money collected by a sheriff on an execution is neither goods nor effects, and approving the decision in *Turner* v. *Fendall*, proceeded:

"Neither can this money, in my opinion, be considered as a *credit* in

the hands of the officer.   There cannot be a credit without a creditor and a debtor.   There is nothing in the reason of the thing, resulting from the relation of a judgment-creditor and an officer who has collected money for him, which renders the one a creditor and the other a debtor. There is nothing said in any of the books, which implies that that relation exists between them.   On the contrary, money so collected is in the custody of the law, and the sheriff is the trustee for its safe keeping. Money, I think, under such circumstances, is not *goods, effects,* or *credits* of the judgment-creditor, in the sense of the act."

PARSONS, C. J., delivered an opinion to the same effect.

In *Pollard* v. *Ross,* 5 Mass. 319, where a sheriff was garnished *after* the return of the execution, the Court affirmed its ruling in *Wilder* v. *Bailey.    Vide,* also, *Robinson* v. *Howard,* 7 Cush. 257.

To the same effect with the above authorities, *vide Farmer's Bank* v. *Beaston,* 7 Gill and Johnson, 421; *Jones* v. *Jones,* 1 Bland, 443; *Blair* v. *Cautey,* 2 Speers, 34; *Burrell* v. *Letson, id.* 378; Same Case, 1 Strobh. 239; *Marvin* v. *Hawley,* 9 Missouri, 382; *Pawley* v. *Gains,* 1 Overt. 208; *Drane* v. *M'Gavock,* 7 Humph. 132; *Staples* v. *Staples,* 4 Maine, 532; *Zurcher* v. *Magee,* 2 Ala. 253; *Overton* v. *Hill,* 1 Murph. 47.   *Sed vide Conant* v. *Bicknell,* 1 D. Chipman, 50; *Hurlbut* v. *Hicks,* 17 Vermont, 193; *Crane* v. *Freese,* 1 Harrison, 305; *Adams* v. *Barrett,* 2 New Hamp. 374.