## Linn et al., Appellants, *v.* Chambersburg Borough.

*Constitutional law—Municipalities—Manufacture of electricity—Act of May 20, 1891, P. L. 90—Article 9, section 7, Const.*

The legislature has the constitutional power to authorize a municipal corporation to manufacture electricity for the use of the inhabitants of the municipality.

The act of May 20, 1891, P. L. 90, entitled "An act to authorize any borough now incorporated or that may hereafter be incorporated to manufacture electricity for commercial purposes, for the use of the inhabitants of said boroughs," etc., is constitutional.

*Municipalities—Constitutional limit of debt—Burden of proof.*

On a bill in equity to restrain a borough from undertaking the erection of an electrical plant on the ground that the borough indebtedness would be increased beyond the constitutional limit, the burden is on the plaintiff to prove that the indebtedness would be necessarily increased to an amount exceeding the legal limit.

*Equity—Master's fee—Costs—Review.*

In the absence of any evidence that would justify the Supreme Court in saying that a master's fee is clearly excessive, it will be assumed that the compensation sanctioned by the court below was not unreasonable.

Argued March 5, 1894.   Appeal, No. 346, Jan. T., 1893, by S. M. Linn et al., from decree of C. P. Franklin Co., dismissing bill in equity.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill to restrain erection of electric light plant.

The case was referred to William Alexander, Esq., as master, who reported in part as follows:

"1. It is admitted that all the plaintiffs in this case are taxpayers of the borough of Chambersburg, and that all except Augustus Duncan and Benjamin C. Ross are citizens resident in the said borough.

"2. The defendant in this proceeding is the Burgess and Town Council of the Borough of Chambersburg, a municipal corporation incorporated into a borough by act of March 21, 1803, P. L. 379, and by the said act of incorporation the limits and boundaries of the said borough were particularly set forth, and it was enacted: 'That from and after the first Monday in May (1803) the Burgess and Town Council duly elected and

their successors shall be one body politic and corporate in law, by the name and style of The Burgess and Town Council of the Borough of Chambersburg, and shall have perpetual succession. And the said burgess and town council aforesaid and their successors, shall be capable in law, to have, get, receive, hold, and possess goods and chattels, lands and tenements, rents, liberties, jurisdictions, franchises and hereditaments, to them and to their successors in fee simple or otherwise, not exceeding the yearly value of five thousand dollars, and also to give, grant, sell, let and assign, the same lands, tenements, hereditaments and rents, and by the name and style aforesaid they shall be capable in law to sue and be sued, plead and to be impleaded, in any of the courts of law in this commonwealth, in all manner of actions whatsoever, and to have and use one common seal, and the same from time to time at their will to change and alter.' See section 3. Also, 'That it shall and may be lawful for the town council to meet as often as occasion may require, and enact such by-laws, and make such rules, regulations and ordinances as shall be determined by a majority of them necessary, to promote the peace, good order, benefit and advantage of said borough, particularly by providing for the regulation of the market, streets, alleys and highways therein; they shall have power to assess, apportion and appropriate such taxes as shall be determined by a majority of them necessary for carrying the said rules and ordinances from time to time into complete effect; . . . . Provided, That no by-law, rule or ordinance of the said corporation shall be repugnant to the constitution or laws of the United States or of this commonwealth. . . . Provided also, that no tax shall be laid, in any one year, on the valuation of taxable property exceeding one cent in the dollar, unless some object of general utility shall be thought necessary, in which case a majority of the freeholders of said borough in writing under their hands, shall approve of and certify the same to the town council, who shall proceed to assess the same accordingly.' See section 6.

"3. The said borough of Chambersburg has continued to hold and exercise the rights and privileges and perform the duties granted and imposed upon it, as a body politic or municipal corporation, from the date of its incorporation until the present time, under its original charter and the acts of the general assembly of Pennsylvania since passed in relation thereto.

"4. Since the early part of the year 1890, at the date of the filing of the bill in this case, March 22, 1892, and at the present time, the said borough of Chambersburg owns, controls and operates an electric light plant for the purpose of providing an ample supply of light for its streets, public buildings and grounds, and a short time prior to the filing of this bill, to wit, about Dec. 7, 1891, the said borough made some additions to the engine, dynamos and other machinery about the plant, and since that date it has been supplying a number of the inhabitants of the borough with electricity for the purpose of lighting their stores and places of business, and it has charged and received certain fixed charges and prices for the said supply of electricity and light.

"5. The capacity of the said plant as used and operated for street lighting purposes, prior to the additions above referred to, was sufficient for the supply of seventy arc lights of 2000 candle power each, and this entire number of lights was used in lighting the streets and public buildings of the borough.

"6. The additions and improvements made to the plant prior to the filing of the bill in this case and within a short time thereafter, consisted of the following items: Conversion of the single cylinder engine into a compound cylinder, and necessary pulleys and shafting, and the erection of a new stack to the boiler, at a cost of $698; the erection of a commercial circuit, for wires, poles, brackets, insulators, etc., and labor, at a cost of about $200; the purchase of thirty or forty arc lamps, at a cost of from $1,200 to $1,600; the purchase of a fifty arc light dynamo, at a cost of $2,875. These additions and improvements were made by the borough for the purpose of increasing the capacity of the plant so as to be able to supply electricity to the inhabitants of the borough for lighting purposes in their stores and dwellings, at fixed charges and prices, and the said borough has been furnishing and still is supplying the said citizens with electricity for lighting purposes as aforesaid. Prior to March 22, 1892, seven arc lamps were in use by citizens of the borough, and since that date the number has been increased until at least thirty arc lamps of 2000 candle power are now in use by sundry citizens of the said borough, and the same are furnished with electricity by the borough at rates and prices

fixed by the burgess and town council of the borough of Chambersburg by ordinance."

The seventh finding recites the act of May 20, 1891.

" 8. In accordance with the provisions of § 2 of the said act of May 20, 1891, and in the manner provided by the act of April 20, 1874, and the amendment thereto passed June 9, 1891, the said borough, on Dec. 7, 1891, at a regular meeting of the burgess and town council of the said borough, signified its desire, by a majority vote of the said town council, to make an increase of indebtedness of the said borough in the sum of $10,000 for the purpose of increasing the electric light plant to furnish the citizens with commercial light and electricity, and to submit to the vote of the qualified electors of the borough the question as to the said increase of indebtedness at the election to be held in February, 1892. And the said burgess and town council of the said borough gave notice to the qualified electors of the said borough, by weekly advertisement in three newspapers published in said borough, for thirty days prior to Feb. 16, 1892, setting forth the action of the said town council, and that an election would be held at the places of holding the municipal elections in said municipality on Feb. 16, 1892, Tuesday, between the hours of 7 A. M. and 7 P. M. of said day, for the purpose of obtaining the assent of the electors thereof to such increase of indebtedness, and the said notice contained a statement of the amount of the last assessed valuation of property, the amount of the then existing debt, the amount and percentage of the proposed increase, and the purpose for which the indebtedness was to be increased, the form of the ballot and method of voting, and the particular places for voting in the several wards.

" 9. The said election, as specified in the said notice, was duly held on Feb. 16, 1892, and resulted in favor of the increase of the debt of the said borough in the sum of $10,000, for the purpose specified in the said notice. The return of the said election was duly certified, and with a certified copy of the action of councils and the advertisement, it was made a record of the court of quarter sessions of Franklin county, and a certified copy of the record as aforesaid delivered by the clerk of the said court to the corporate authorities and by them entered upon the minutes of the said corporation.

"10. By virtue of the authority thus conferred upon them the burgess and town council of the said borough proceeded to increase the indebtedness of the said borough in the sum of $10,000, for the purpose of enlarging and extending the electric light plant of the said borough, and passed an ordinance on March 3, 1892, entitled 'An ordinance relating to the supply of incandescent and arc lighting and electricity, by the borough of Chambersburg, Pa.' This ordinance provides for contracts to be entered into by the borough with each individual citizen desiring the use of electricity for lighting purposes in stores, dwellings, churches, fairs, festivals and other places, and prescribes the duties of the borough on the one part and the purchaser or consumer on the other part, and fixes the rates and prices to be charged by the borough for the supply of electricity, by arc and incandescent lights, to these persons and places.

"11. In furtherance of the design and purpose of the burgess and town council of the borough of Chambersburg to increase the capacity and enlarge the electric light plant of the said borough, for the supplying of electricity to its inhabitants for lighting purposes, the said authorities, before the date of the filing of the bill in this case, and after the said election held on Feb. 16, 1892, by letter through the chairman of the committee on electric light, invited proposals from The Thomson-Houston Electric Light Co. of Philadelphia, the Westinghouse Electric and Manufacturing Co. of Pittsburgh, and the Edison Electric Light Co., and received proposals or bids from the first two companies for the furnishing of a dynamo for incandescent lighting, of a capacity of 650 incandescent lamps, and the necessary appliances to operate the same, and the said borough received an incandescent dynamo of the capacity indicated, with appliances, from the Thomson-Houston Co., but have never consummated the purchase or put the same in operation, owing to the filing of the bill in this case. The said borough also entered into a contract with The Taylor Engine Co. for the purchase of an engine and boilers, and necessary appliances, at a cost of $5,839, for the purpose of supplying additional motive power to meet the increased demand for power in running the commercial lighting. This contract was entered into before the bill in this case was filed, and after Feb. 16, 1892, and with-

out inviting bids for the same or advertising for proposals, but the engine, etc., have never been delivered, on account of the filing of the bill in this case. The said borough, during the same period, advertised for and received bids for the necessary changes in the building and brick stack, but never entered into contract for the same on account of the filing of the bill in this case.

"14. The bonds provided for by the action of the burgess and town council of the borough of Chambersburg and the election of Feb. 16, 1892, for the increase of the indebtedness of the borough in the sum of $10,000, were never issued by the said municipality, the action in reference thereto being delayed by the filing of the bill in this case.

"15. The last assessment of property in the borough of Chambersburg made prior to the election held on Feb. 16, 1892, and the date of the filing of this bill, March 22, 1892, was made in the month of June in the year 1891, and the assessed value thereof as returned to the commissioners of Franklin county and transmitted by them to the borough authorities was as follows: Value of occupations $95,435; value of real estate $1,961,580; value of horses and cattle $19,101; total $2,076,116. This was at that time the assessed value of the property in the borough of Chambersburg subject to taxation for county purposes and also subject to taxation for borough purposes.

" This property assessed as above stated does not include the property in the said borough assessed exclusively for state purposes. The assessed value of this kind of property, to wit: Mortgages, money owing by solvent debtors, etc., etc., as set forth in the acts of June 30, 1885, and June 1, 1889, taken and returned at the same time, amounted as follows: Money at interest $1,112,475.08.

"16. The entire debt of the said borough at the date of the action of the burgess and town council of the borough of Chambersburg, submitting the question as to an increase of the debt of the borough in the sum of $10,000 for the purpose of manufacturing electricity for commercial purposes, consisted of the following items, to wit:

| | | |
|---|---|---|
| Borough Bonds, reissued Oct. 1, 1888, | . | $46,500.00 |
| Water Bonds,     "    " " " bal. | . | 31,000.00 |
| | | |
| Amount carried forward, . . . | . | $77,500.00 |

| | | | | |
|---|---|---|---|---|
| Amount brought forward, | . | . | . | . $77,500.00 |
| Electric Light Bonds issued Jan., 1890, | . | | | 10,000.00 |
| Water Bonds, Series B, issued Jan., 1891, | | | . | 35,000.00 |
| Total Bonded Debt, | . | . | . | $122,500.00 |

At the same time the said borough owed follow-
ing sums to contractors and others, viz.:

| | | | | |
|---|---|---|---|---|
| A. H. Coon, balance on contract, | | . | . | $1,572.92 |
| Buffalo Steam Pump Company, | . | . | . | 1,138.57 |
| Mrs. Maria Houser, balance on hand, | . | | . | 933.33 |
| Entire Debt, | . | . | . | . | $126,144.82 |

" 18. From Dec. 7, 1891, until the present time, the bonded
indebtedness of the said borough of Chambersburg has never
exceeded the sum of $122,500, and the other indebtedness of
the said borough has never exceeded the sum of $3,644.82, as
set forth in finding 16th during the same period. The treasury
of the borough at all times during this period has contained
sufficient cash to pay all drafts made for payment by the bor-
ough authorities, and since the filing of the bill in this case the
claim of the Buffalo Steam Pump Co. for $1,138.57 has been
paid, and also the one half of the claim of Maria Houser for
$933.33.

" 19. On April 20, 1892, at the date the burgess and town
council of the said borough of Chambersburg provided for the
issuing of the bonds of the said borough in the sum of $10,000
for the purpose of enlarging the electric light plant, the said
burgess and town council passed the following resolution:
'Resolved, That in order to provide for the payment of the in-
terest and principal of said bonds, that an annual tax equal to
at least eight per centum of the amount of said increased debt
be levied and assessed, to be applied exclusively to the payment
of the interest and principal of said indebtedness,' and on
May 23, 1892, the said burgess and town council fixed the tax
levy for the year commencing June 1, 1892, at four mills on the
dollar for borough purposes, and five mills on the dollar for
the payment of interest and the liquidation of the principal of
bonds.

" CONCLUSIONS OF LAW.

" 1. The proposed increase of indebtedness by the burgess

and town council of the borough of Chambersburg in the sum of $10,000, does not increase or cause the entire indebtedness of the said borough to become greater than seven per centum of the assessed value of property within the limits of the said borough.

Assessed value of property, . . . $2,076,116.00
Present indebtedness, . . . . 126,144.82
Proposed increase, . . . . . 10,000.00
Seven per centum of valuation, . . 145,328.12

" 2. The act of May 20, 1891, and the action of the burgess and town council of the borough of Chambersburg, in pursuance thereof, are not in violation of section 7, article 9, of the constitution of Pennsylvania, and the said section of the constitution does not, in letter, or spirit and meaning, restrain or prohibit the legislation and action above referred to.

" [3. The proposed enlargement of the electric light plant of the borough of Chambersburg, as set forth in the findings of facts, for the purpose of manufacturing and furnishing electricity for lighting purposes to all the inhabitants of said borough who may desire to use the same, at fixed and uniform rates and charges established by ordinance of said borough, the said plant to be owned and operated by the said borough, constitutes a public service, of benefit and convenience to all the inhabitants of the said borough.] [2]

" [4. The legislature of the state of Pennsylvania has authority to confer the power upon municipalities of manufacturing and distributing electricity for the purpose of furnishing light to their inhabitants for private use, and it has conferred such power upon the borough of Chambersburg by act of May 20, 1891.] [3]

" [7. The burgess and town council of the borough of Chambersburg have a lawful right to issue the bonds of the borough in the sum of $10,000, for the purpose of raising money wherewith to erect and enlarge the present electric light plant of the said borough, for the purpose of supplying electricity for commercial purposes.] [5]

" 8. The said burgess and town council of the borough of Chambersburg have a lawful right to enlarge the electric light plant of the said borough, to issue bonds in the sum of $10,000 to provide for the expense incurred, and to furnish electricity

for lighting purposes for private use, and the plaintiffs are not entitled to any relief against said acts of the said municipality. It is therefore recommended that the bill of the said plaintiffs be dismissed at the cost of the said plaintiffs."

The master's fee was fixed at $300.

Exceptions to the master's findings of law as in brackets and to the fee were dismissed, in the following opinion by Stewart, P. J.:

" The purpose of this bill is to restrain the borough of Chambersburg from engaging in the manufacture of electricity for the supply and use of its citizens.   The effort is made on two distinct grounds : First, that the act of May 20, 1891, entitled ' An act to authorize any borough now incorporated, or that may hereafter be incorporated, to manufacture electricity for commercial purposes for the use of the inhabitants of said borough, and for this purpose to erect, purchase or condemn electric light plants,' etc., under which the defendants claim to exercise this right, is unconstitutional, and therefore void.

" Second, that the debt proposed to be incurred by the borough, or which it will necessarily incur, for the purpose aforesaid, will increase the indebtedness of the borough to an amount in excess of the constitutional limit of seven per cent of the assessed valuation of the taxable property.

" In both contentions the conclusions of the master are adverse to the plaintiffs, and they except thereto.

" The exceptions which relate to the constitutionality of the act of May 20, 1891, are overruled.   It is sufficient to say in this connection, that our attention has not been called to any exception or prohibition in the constitution with which the act conflicts ; and that we know of none.

" Nor can the exceptions to the master's conclusions with respect to the indebtedness of the borough be sustained.   It is immaterial whether occupations be regarded as taxable property within the meaning of the constitution, or not, so far as the result here is concerned.   Eliminate entirely from the calculation the tax assessed upon occupations, and seven per centum of the assessed valuation of what remains makes a total which exceeds, by several thousand dollars, the debt of the borough at the time referred to.

" But there is no reason why this tax should be eliminated.

Indeed there is express authority for including it in the calculation. This very point was raised and decided in the case of Brown's Ap., 111 Pa. 80, and it now admits of no controversy.

" We have considered the exceptions to the costs taxed, but are unable to see any good reason why the bill as taxed should not be allowed. The master's work was protracted, and he has given it careful study and attention."

*Errors assigned* were (1–5) dismissal of exceptions, quoting them; (6) allowance of master's fee; (7) dismissal of bill.

*O. C. Bowers*, for appellant, cited: Act of May 20, 1891, P. L. 90; Act of May 23, 1889, art. 5, § 42, P. L. 293; Cooley on Const. Lim. 260, 264, notes; Maulding v. Greenville, 8 L. R. An. 296; Ottawa v. Carey, 108 U. S. 110; Lowell v. Boston, 111 Mass. 454; Parkersburg v. Brown, 106 U. S. 487; Weismer v. Douglas, 64 N. Y. 91; Sharpless v. Mayor, 21 Pa. 168; House of Representatives' Case, 150 Mass. 592; Spalding v. Peabody Town, 10 L. R. An. 397; Western Saving Fund Society v. Phila., 31 Pa. 183; Wheeler v. Phila., 77 Pa. 354; Gove v. Epping, 41 N. H. 539; Crowell v. Hopkinton, 45 N. H. 9; Freeland v. Hastings, 10 Allen, 570; People v. Flagg, 46 N. Y. 401; Kelly v. Marshall, 69 Pa. 319.

*J. D. Ludwig*, for appellees, not heard, cited: Brown's Ap., 111 Pa. 80; R. R. v. Pittsburgh, 14 Pitts. L. J. 289; Acts of April 11, 1799, § 8; 3 Sm. L. 395; April 15, 1834, P. L. 511, art. 9, § 7, Const.; Sharpless v. Mayor, 21 Pa. 185; Com. v. Hartman, 17 Pa. 118; Kent, 332; Western Saving Fund Society v. Phila., 31 Pa. 183; Wheeler v. Phila., 77 Pa. 353; Lehigh Water Co.'s Ap., 102 Pa. 515; House of Representatives' Case, 150 Mass. 592; Crawfordsville v. Braden, 14 L. R. An. 268; Smith v. Nashville, 88 Tenn. 464; Cooley's Const. Lim., 6th ed. 599; Kirby v. Shaw, 19 Pa. 258; Com. v. Butler, 99 Pa. 540; Kelly v. Pittsburgh, 85 Pa. 170; Weister v. Hade, 52 Pa. 474; Hilbish v. Catherman, 64 Pa. 154; McFate's Ap., 105 Pa. 323; Dillon, Mun. Corp., 4th ed., sec. 3a.

PER CURIAM, March 26, 1894:

This bill was brought to restrain the borough of Chambers-

burg from manufacturing and supplying electricity for the use and benefit of its inhabitants under the provisions of the act of May 20, 1891, P. L. 90. It is grounded mainly on allegations which, in substance, are (1) that said act is unconstitutional, and (2) that the debt, which would necessarily be incurred by the borough in carrying into effect its proposed undertaking, will increase its indebtedness to an amount in excess of the constitutional limit of seven per centum of the assessed valuation of taxable property within the corporate limits. As to both of these allegations, the learned master's findings of fact and legal conclusions are in defendant's favor. The first five specifications charge error in overruling the several exceptions to the master's conclusions of law recited therein respectively. For reasons sufficiently stated in the report and in the opinion of the learned president of the common pleas, approving the same, we think there was no error in refusing to sustain either of said exceptions.

The burden was on the plaintiffs to prove that the indebtedness of the borough would be necessarily increased to an amount exceeding the constitutional limit, etc. In that they were unsuccessful.

While the legislative intention may not be as clearly and happily expressed as it might have been, we fail to discover anything in the provisions of the act that is in conflict with the constitution. The power of the legislature to authorize municipal corporations to supply gas and water for municipal purposes, and for the use and benefit of such of their inhabitants as wish to use and are willing to pay therefor at reasonable rates, has never been seriously questioned. In view of the fact that electricity is so rapidly coming into general use for illuminating streets, public and private buildings, dwellings, etc., why should there be any doubt as to the power to authorize such corporations to manufacture and supply it in like manner as artificial gas has been manufactured and supplied? It is a mistake to assume that municipal corporations should not keep abreast with the progress and improvements of the age.

The subjects of complaint in the remaining specifications are the learned judge's refusal to reduce the master's fee, and the decree dismissing the bill. As to the former he says: " We are unable to see any good reason why the bill as taxed should

not be allowed. The master's work was protracted, and he has given it careful study and attention." In the absence of any evidence that would justify us in saying that the fee is clearly excessive, we must assume that the compensation sanctioned by the court was not unreasonable.

The decree dismissing the bill is the logical sequence of the facts and legal conclusions properly drawn therefrom. The questions involved are so well considered and so satisfactorily disposed of by the learned master and court below, that further comment is unnecessary.

Decree affirmed and appeal dismissed with costs to be paid by appellants.