JACKSONVILLE ELECTRIC LIGHT COMPANY, APPELLANT, VS. CITY OF JACKSONVILLE ET AL. APPELLEES.

1. A municipal corporation can exercise only such powers as are granted to it in express terms, or those necessarily or fairly implied in or incident to the powers expressly granted, or those that are essential and indispensable, not simply convenient to the declared objects and purposes of the corporation. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation.

2. While a strict construction should be applied to the grant of powers, and especially those which result in public burdens, or which are out of the usual range of corporate action, yet if a power is fairly or necessarily implied in or incident to those clearly given, it should not be impaired by a strict construction.

3. All the powers conferred upon a municipal corporation should be construed with a view of carrying out the objects and purposes of its creation as a public agency.

4. Supplying the inhabitants of a city with electric light for use in their private residences and houses is such a municipal purpose as to authorize its delegation by the Legislature to municipal bodies.

5. The charter act of the city of Jacksonville (Chapter 3775, acts of 1887) conferring power upon the city council to provide for lighting the city by gas or other illuminating material, or in any other manner, together with other specified powers, held sufficient to authorize the erection and maintenance at public cost of an electric plant of sufficient power and capacity to light not only the streets and public places in the corporation, but also for the purpose of supplying the inhabitants of the city with electric light for use in their private residences and houses.

Appeal from the Circuit Court for Duval county.

### STATEMENT.

The appellant company, a corporation existing under the laws of Florida, was complainant in the Circuit Court, and owned an electric plant of the value of $30,000, and subject to taxation, in the city of Jacksonville. It alleges that it had been and was then engaged in furnishing electric light for the city of Jacksonville and the inhabitants thereof in their private houses and places of business, and that its plant had sufficient power and capacity to furnish all the electric light that the city and its inhabitants might desire; that the city, through its Board of Public Works, had entered into a contract with the General Electric Company, a corporation existing under the laws of New York, for the purpose of constructing an electric light plant within said city, and also contracted with other persons and corporations unknown to complainant, for the purpose of purchasing engines and boilers

to provide motive power for said plant. The right of the Board of Public Works to so act is claimed under and by virtue of some ordinance of the city. That under the agreement with the General Electric Company, the city had contracted to purchase material, machinery, apparatus, lamps and lights, not only for the purpose of establishing an electric plant to light the streets, public buildings and places of the city, but for the purpose of furnishing and selling electric light to the inhabitants of the city in their private residences and places of business. For the material, apparatus and lamps to be procured from the General Electric Company, the city was to pay $47,500, and for the engines and boilers the sum of $25,000 was to be paid, making a total of $72,000. That the city intended to appropriate the public revenues of the municipality to pay for such electric plant, and it was the design of the city and its Board of Public Works to construct said plant with such power and capacity as would be necessary to supply lamps and light to all the inhabitants of said city in their private houses and places of business, and for this purpose had provided in said contract to purchase four thousand incandescent lamps which were not necessary and could not properly be applied to light the streets and other public places of the city, and that independent of said four thousand lamps, the city had provided for all lamps, both arc and incandescent, necessary and proper for lighting the streets and public places in the city. The cost of the plant, engines, boilers, machinery and attachments, it is alleged, exceeds the cost of such plant in full and adequate power to light the streets and public places of the city by between thirty-five and forty thousand dollars, and that the expenditure of such excess was improvident, unauthorized by the

:232 SUPREME COURT.

·Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Statement.

laws of the State, and a wrong to the tax payers of the city. That the city had no power to appropriate any of its revenues or levy and collect taxes for any purpose and object other than a strictly municipal purpose, and that the appropriating of its revenues for the purpose of buying machinery and apparatus to furnish lights to the inhabitants of the city in their private houses and places of business was not a municipal purpose, and the city had no authority to do so. It is also alleged that the Board of Public Works and the city had violated the ninth and thirteenth sections of the charter act of the city, being Chapter 3775, in reference to letting contracts for over $200 to the lowest responsible bidder, and that the General Electric Company was not the lowest bidder for furnishing machinery and apparatus for said electric plant, but other responsible parties bid a less sum for the same material than the said General Electric Company.

The bill prays that the city and the Board of Public Works be enjoined from executing and performing the contract entered into between the Board of Public Works and the General Electric Company, and from applying any revenues of the city towards the execution of the said contract, and also that the city and Board of Public Works be enjoined from appropriating any revenues of the city to pay for the four thousand incandescent lights and the other portions of the apparatus and machinery designed for commercial purposes, or to pay for any engines, boilers or machinery other than strictly necessary to furnish motive power for an electric plant of sufficient power and capacity to light the streets and other public places and buildings of the city of Jacksonville.

The answer of the city and the Board of Public

Works, on information, alleges that complainant's plant did not have as much as one-half the necessary power or capacity to furnish all the electric lights that the city and its inhabitants desired or would pay for if electric lights were furnished to them at a reasonable price. The contracts with the General Electric Company and other companies for the construction of an electric light plant in the city of Jacksonville are admitted, and it is alleged that they were entered into by virtue of and in compliance with the laws of the State and ordinances of the city of Jacksonville. It is also averred that in making the contracts for the erection of said electric plant in the city, provision was made for such a plant as would have the power and capacity to furnish all the lights needed for lighting the streets and public places of the city, and also for furnishing some electric lights to the inhabitants of the city in their private residences and places of business. The answer further alleges that under the provisions of the laws of this State and ordinances of the city of Jacksonville, the city had authorized the issue and sale of seventy-five thousand dollars of bonds to pay for the erection of an electric plant, and it was not contemplated that the plant contracted to be erected would be paid from the ordinary revenues of the city derived from taxation. It is denied that the city of Jacksonville contemplated, or any of her authorized officers or agents had ever declared their design to construct an electric light plant with sufficient power and capacity to furnish lamps and lights to all the inhabitants of the city in their private residences and places of business, and it is averred that the city had not contracted for sufficient lamps and material for furnishing such amount of lights. It is further stated that the officers of the city having in charge the erection of said elec-

234 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Statement.

tric light plant had used their best discretion in con-
tracting for the same, and had contracted for the erec-
tion of a plant sufficient and only sufficient to furnish
adequate lights for the streets and public places of the
city, and such number of private residences and busi-
ness houses as complainant's plant was unable to sup-
ply, and to supply a want in this respect that com-
plainant, through a long term of years, had deliber-
ately abstained from supplying. The answer claims
that defendants had authority under the laws of the
State and the ordinances of the city to contract for
the erection of such plant as was contemplated. The
allegations of the bill in reference to not letting out
the contracts to the lowest bidder are denied, and de-
fendants say that they believe the contracts were made
with the lowest and best responsible bidder. It is also
further alleged that the Jacksonville Electric Light
Company was, and had been for many years, the only
electric light company in the city, and that the persons
who control this, the only electric light company in the
city, also control, and for several years have controlled
the only gas company in the city, so that there has
been practically, if not in fact, a single corporation
controlling the supply of gas and electric light to the
city of Jacksonville and its inhabitants, and that for
years the price of gas and electric lights has been
maintained at such extortionate rates that a very large
proportion of the people of the city who desired and
would use at reasonable prices, has been forced to
abstain from the use thereof, and the city and other
of its inhabitants have been forced to pay very largely
more than a reasonable price for the gas and electric
lights used; also the city has been unable to procure
from either the gas or electric company proper lights
for lighting the city as it should be; and, in fact, to

JUNE TERM, 1895. 235

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Statement.

properly light the city and furnish the lights for private residences and business houses would require a plant of very much more capacity than that of the complainant. The General Electric Company, of New York, demurred to the bill.

A motion for temporary injunction on bill, answer, affidavits and documentary evidence, was made and denied.

Subsequently a supplementary bill was filed, in which reference is made to the allegations of the original bill, the answer thereto and proceedings thereon, and further alleging that since the order denying the temporary injunction the city of Jacksonville, acting through its Board of Public Works, had given it to be understood that the city intended engaging in the business of furnishing electric lights to any person, natural or artificial, who may desire to contract for the same, and also to furnish electric light to private residences and business houses and to charge therefor at a schedule of prices which had been published for the information of the public by way of inducement to persons to contract for electric lights. It is alleged that the city had no power under its charter to contract with individuals to furnish electric light, or to furnish the same for private residences or business houses, or to in any way enter commercially into the business of furnishing electric lights, and that such proposed action on the part of the city is not a municipal purpose within the scope of the powers granted by the Legislature, and also that such proposed action violated complainant's rights in bringing a branch of the government into competition with complainant, chartered for the special purpose of furnishing electric lights and engaging commercially in the electric lighting business. The prayer in the supplemental bill is that the

city and its Board of Public Works be restrained from engaging commercially in the business of electric lighting, and from furnishing electric lights to persons, either natural or artificial, or to private residences or business houses.

A motion for temporary injunction was again denied, and the bill dismissed for want of equity. The order denying the motion and dismissing the bill recites that the cause came on to be further heard upon the original and supplemental bills, the motion of complainant for temporary injunction, and defendants' motion to dismiss for want of equity.

Complainant appealed from all the orders of the Circuit Court to the June term, 1895, of this court, and upon the transcript of the record has moved here for a temporary injunction as prayed for in the original and supplemental bills.

*John E. Hartridge, Henderson & Raney,* for Appellant.

### BRIEF OF JOHN E. HARTRIDGE.

This cause comes up for a hearing now upon motion of the appellant for an injunction restraining the city of Jacksonville from furnishing business houses and dwellings with electric lights and power, and from dealing commercially in electricity.

### ARGUMENT.

We submit a sound proposition of law that unless municipalities have been granted by legislative enactment directly the power to furnish for hire power and lights to business houses and dwellings and to deal commercially in electricity, it can not be so.

Municipal corporations possess only such powers as are expressly granted to them and are necessary to

carry into effect the powers so granted. Lawson's Rights and Remedies, Vol. 7, sec. 3926, and authorities there cited.

Our proposition in this case is, that unless the Legislature of the State has granted the city of Jacksonville the power to construct an electric plant and to furnish private residences and business houses with lights, it can not do so.

In construing all grants of power to a city the doctrine of ultra vires is applied with greater strictness then to private bodies. Lawson's Rights and Remedies, Vol. 7, sec. 3926.

The act of the Legislature, being Chapter 3775 of the laws of Florida, is the only legislative enactment under which the city of Jacksonville can possibly claim any power to furnish lights and power. Unless the power is here granted, it does not exist.

It is contended on the part of the city of Jacksonville that sections 4, 6 and 7, page 165, of the acts of 1887, and section 2 of Article 1, page 160, of acts of 1887, gives this power to the city.

An examination of these sections, we contend, will show that no such power is given.

Section 4 referred to only gives the power to make appropriations for lighting the streets and public buildings, and section 6 only provides for the limit of the levy for raising by taxation money for illuminating material, while section 7 merely prescribes the duty of the City Council as to the budget and expense for the fire department, gas, etc. Clearly under these sections no such power as that claimed exists.

The city further contends, however, that under Section 2 of Article 1, this power is embraced in the following words:

That they have power "for the erection of water-works; for the establishment of poor-houses, pest-houses, houses of detention and correction; for public parks and promenades, and for any other public purposes that the Mayor and City Council may deem necessary or proper."

This section, as will be observed, is an enumeration of powers and provides · that the city may purchase, least or hold real or personal property for certain purposes, naming them, and then generically says "and for any other public purpose that the Mayor and City Council may deem necessary or proper." This language limits the scope of public purpose to the use of real and personal property and can not under the broadest construction that can be given it be strengthened so as to authorize the city to furnish lights and power. This being so, and the city being a creature of delegated powers, we insist that the power to furnish lights does not exist.

We will not discuss here the question as to whether under the Constitution of the State of Florida the Legislature can so empower a city, since that question does not arise, as the Legislature has not by any enactment granted this power. Certainly all of the authorities are united upon this proposition—that before a city can do so it must have legislative authority.

The city would not itself authorize the laying of gas pipes in its streets, or the lighting of its streets and the placing of poles thereon for electrical purposes, since this power must come from the Legislature of the State. The city not being itself authorized to grant such a power to another surely can not exercise it itself. 52 Fed. Rep. 29.

The court will observe that in those cases where it is held that a city could supply its inhabitants with

electric lights, they are invariably based upon a State statute and support the contention of the appellant here.

The case of the City of Crawfordville vs. Braden, 130th Ind. 149, is based upon a statute of the State of Indiana authorizing a city to furnish lights to its inhabitants. This case also decides that a city has inherent rights to furnish its streets and public places with lights, but does not say that it has the inherent right to furnish private residences and business houses. From this case it is forcibly deducible that a city does not inherently possess the power to furnish individuals.

The case of the Thompson-Houston Electric Company vs. City of Newton, 42d Fed. Rep. 723, which holds that a city may erect an electric plant for the purpose of furnishing light to its citizens in their stores and houses, etc., is based upon a statute of the State of Iowa. The fact that it was necessary to have a statute in order to have this power is hereby emphasized.

The case of Burrough vs. Chambersburg, 160 Penn. State Rep. 511, merely decides that the Legislature has the power, constitutionally, to authorize a municipality to furnish lights to its inhabitants. This proposition, as we stated in the outset, there is no necessity of discussing here, since there is no statute on this subject.

As has been suggested, it is the policy of the law to require municipal corporations to strictly observe their powers. Any doubt or ambiguity arising out of the term used in making and granting powers are resolved against the municipality.

The precise question involved here arises in the case of Maulden vs. City Council of Greenville, S. C., Vol.

240 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

11 S. E. Rep.. 434, and 33d S. C., 1. Vol. 31 A. & E. Corporation Cases, 604, and note.

Here the court decided that the city could construct a plant for furnishing the streets and public buildings with lights, but had no power under the statute to furnish private houses and business places.

The statute in this case was broad in its powers. This decision gives emphasis to the contention here—that there is no inherent power in a municipality to commercially deal in lights, and that the lack of power is not supplied by grants of power from the Legislature, general in character.

The Supreme Court of Massachusetts, in Spaulding vs. Inhabitants of Peabody, 153d Mass., 129, goes even further than the South Carolina case just cited. In this last case the right of the city to furnish lights for public places is denied, as is the right to furnish private dwellings and business places.

The cases cited by the Supreme Court of Indiana in the case of Crawfordville vs. Braden do not mention the conclusion of the court.

The case of the Thompson-Houston Electric Company vs. Newton, 42d Fed. Rep. 725, is based upon a statute which authorized the establishment of the plant. In that case the question here was really not before the court and not in any way essential to a decision of the case. The other case, of Smith vs. Nashville, 88th Tenn. 464, was only on the question of taxation for water works and did not involve the question presented here.

We submit that the injunction should issue.

BRIEF OF HENDERSON & RANEY.

The charter act, Chapter 3775, approved May 31st, 1887, provides (par. 4), that the Mayor and City Coun-

JUNE TERM, 1895.    241

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

cil shall, within the limitations of this act, have power by ordinance * * to provide for lighting the city by gas or other illuminating materials or in any other manner; * * to make appropriations for lighting the streets and public buildings and for the erection of all buildings necessary for the use of the city. There are also provisions authorizing the Mayor and Council to make regulations to secure the general health of the inhabitants and to prevent and remove nuisances, and to provide the city with water by water works within or beyond the boundaries of the city; to provide for the prevention and extinguishment of fires and to organize and establish fire departments.

Section 5 of the act after forbidding the appropriation of money or credit in the way of donation, festivities, pageants, excursions or parades, or for stock in railroads, etc., prohibits the employment or appropriation of the revenues and taxes in any other manner than for purposes strictly municipal and local and according to the provisions of such act.

An act approved May 30th, 1893, Chapter 4239, entitled: "An act to authorize the municipality of Jacksonville to issue bonds and to provide for the payment thereof" authorizes the Mayor and Council to issue bonds of a character and to an amount stated, which bonds, says the act, "shall be used for the refunding of bonded indebtedness of the city now outstanding (after which the water works now covered by the bond indebtedness shall become the property of the city) and for such other municipal purposes as may be provided by ordinance and for the payment of which bonds and interest thereon the entire taxable property

in said city shall be thereby pledged; provided, that before the issue of said bonds shall be made, the issuance of the bonds then proposed to be issued shall be provided for by ordinance expressing in general terms the purposes for which such issues of bonds are to be used, and subsequently approved by a majority of the votes cast by the qualified electors of said city, etc. The water works system of the city of Jacksonville, and such other public property as may be designated by ordinance, may be specially pledged as security for the payment of said bonds.

The above act of May 30th, 1893, does not declare anything other or further than the acquisition of the water works to be a municipal purpose; or, in other words, with the exception stated, it was and is not the function of this statute to create or to authorize the making of anything a municipal purpose which was not so before. Its function and end, with the stated exception, is to provide financial means for carrying out what may already be within the municipal purposes of the charter act.

This being so, the question for decision is whether or not the act of May 31st, 1887, *supra*, authorizes the supplying of electric lights for private dwellings and buildings or other private purposes, or the acquisition by the corporate authorities of the appliances necessary solely for such private purposes, and not necessary for lighting the streets and public buildings and other public places.

There is authority for holding that the language of the above act of 1887, gives the power which is now sought to prohibit the municipal authorities from exercising, and there is authority to the contrary; but the question is now one of first impression before the court. That such authority can be given to cities and

towns need not be denied; such is not the question here. The question is whether or not such authority has been given.

The true rule for the construction of municipal charters is laid down by Judge Dillon in Par. 89, Vov. 1, of his Munic. Corp's. as follows: It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others:    1st. Those granted in express words; 2d. Those necessarily or fairly implied in or incident to the powers expressly granted: 3d. Those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. Any fair reasonable doubt concerning the existence of powers is resolved by the court against the corporation and the power is denied    *    *.    Neither the corporation nor its officers can do any act or make any contract, or incur any liability not authorized thereby (its organic act) or by some legislative act applicable thereto.    All acts beyond the scope of the powers granted are void.

Applying this rule we will first enquire whether or not the power in question has been "granted in express words."    The express grant is of the power "to provide for the lighting of the city by gas or other illuminating material or in any other manner    *    *    and to make appropriations for lighting the streets and public buildings, and for the erection of all buildings necessary for the use of the city."    If this is an express power to make and vend gas or gas and the instruments necessary for its use, for the supply of private houses then it is an express power to make and vend oil, or, it may be, candles, for the same purpose. This power is to provide for lighting the *city*.    This means, upon principle, the lighting of the city in so far as it

244 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

is a public duty to light it. It was not intended to give power in excess of duty. Conceding that the police power of the municipality brings within its control the right to specify what character of illuminating material shall not be used for private purposes, or by private persons for their individual purposes, or what shall be used, it does not give the power or impose the duty of lighting private places. There is no such expression in the act.

Is it a power fairly implied in, or incident to, the powers expressly granted? If the power to vend electric light to be used for private purposes, is implied in or incident to the power of providing for lighting the city by gas or other illuminating materials or in any other manner; or is implied in or incident to the general welfare or other express grant, then a similar power must be implied in or incident to the power to provide anything else for public purposes. Convenience or economy to the individual, or economy, through profit, to the municipality as a public entity is the real consideration at the bottom of the reasoning which concludes that the power in question is implied or incidental to an expressly granted power.

The essentiality of such a power to the declared objects or purposes of this corporation can not be maintained on any reasoning that does not lead to consequences which are hostile to all true theories of municipal power. If convenience, and not essentiality or indispensableness is the test, then the power exists. The power to light for public purposes can certainly exist without that of supplying light for private purposes. This it seems is palpable.

The provision of the 2d section that the corporation may acquire and hold property real and personal within the city or sell and dispose of the same, does

not mean that it may do so for other than corporate purposes. The power to acquire and hold property beyond the limits of the city is confined to that which is to be used for the burial of the dead, or for the erection of water works, or for the establishment of poor houses, pest houses, houses of detention and correction, public parks and promenades, and for any other *public purpose* that the Mayor and City Council may deem necessary. Such other public purposes must be purposes which, in their nature or of themselves, are public. The Mayor and City Council may select from such public purposes, but they can not make that a public purpose which is not so of itself.

The sixth and seventh sections add nothing to the powers granted by the second and fourth sections of the act. They do not make grants of power for any additional corporate function, but provisions for carrying out functions, or powers, granted elsewhere.

*A. W. Cockrell & Son* for Appellees.

Insisting this court, as an appellate court, has no judicial power to *entertain* this motion, *in lisine*, to issue an injunction where one, as in this case, has never issued before; that any injunction it could issue, in response to this motion, upon this transcript, made up as it is of a record *complete* in all its parts, wherein all the pleadings and all the proofs that this appellate court, on this appeal, at any stage of it, can possibly consider, are now before the court, must necessarily be the result of judicial action upon an examination of the *whole* case, made by the record, conducted with the same caution, scrutiny, care, fullness and deliberation, the court would bestow upon the case upon final submission and hearing; that if on the other hand, the

motion being entertained, the court refuses the injunction prayed, such *refusal* can only be predicated upon the same caution, scrutiny, care, fullness and deliberation, the court would bestow upon this record, as "res integra," upon final submission and hearing; that the issuance of, or refusal to issue, the injunction prayed, and the opinion supporting such judicial action, equally and alike, must dispose of every question raised on this record, which the court should dispose of, on this appeal, on final submission and hearing; that the court, in the absence of an urgency which might be brought to the attention of the court on a motion to advance the cause should not do violence to its own rules of procedure and its established practice of considering causes in the order of their submission, to the denial of justice to, and the disparagement of the claims of, litigants whose causes have long since been submitted, or are in the way of submission in the recognized course of orderly procedure in this court; the clamor for place in the line of litigants and the confusion which would be invited in granting to this appellant a full consideration of its case necessarily involved in the entertaining of this motion; we submit this motion should not be entertained.

But if this motion be entertained, we submit as upon final submission and hearing the following :

### ARGUMENT FOR APPELLEES.

The original bill filed herein prayed for an injunction against the execution of an existing contract to build an electric plant in so far as such plant was to be equipped in excess of the requisition to supply lights to other than public buildings and public places.

The injunction was denied; thereupon a supplemental bill was filed, the allegations of which, construed as they must be most strongly against the pleader, show that the contract, the execution of which was sought to be restrained by the original bill, had been completed. The purpose of the bill, as supplemented, has no reference by injunction or otherwise to the *construction* of the electric plant, because the plant was then established; but to enjoin, *not* the electric company which built the plant, but the City of Jacksonville, *one* of the defendants to the original bill, from supplying by means of this plant electric lights to the inhabitants of Jacksonville.

The so-called supplemental bill in its allegations and prayers abandoned the original bill, set up a new state of facts upon which relief distinct from and unknown to the original bill was prayed ; and in which one of the defendants to the original bill, that is the Electric Light Company, completely disappears from the litigation. Not a single fact by way of omission or commission is set up in the supplemental bill against this defendant, nor is any the slightest relief prayed against it.

It is clear, therefore, treating as this court must, for the purpose of this hearing, precisely as the court below had to treat them, the original and supplemental bills, as *one* pleading, the granting of an injunction against the erection of an electric plant is beyond the power of the court, seeing that such an erection is an accomplished fact.

There is not a particle of new matter introduced, other than a statement of the schedule of prices for electricity to be furnished the inhabitants of the city ; and in this supplemental bill, all the original defendants, except the City of Jacksonville, are ignored.

248 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

It is idle to say that this bare specification of prices, announced February 14, 1895, can, upon any possible theory of law or pleading, introduce into the allegations of the original bill, by way of supplement or otherwise, matter of substance upon which an equity to the heavy hand of injunction on all the defendants, denied to the original bill, may be predicated of the supplemental bill, confined in its allegation and prayer to the city of Jacksonville.

Nor can it be seriously claimed that this specification of prices, though "published for the information of the public by way of inducement for persons to contract with it"—the city—"for electric lights," invests the supplemental bill with an equity denied to the original bill.

Nor is the denial of corporate power to the city to build a plant to furnish lights to the inhabitants of the city stated or urged with any more vehemence or in terser legal phraseology, in the so-called supplemental, than it was in the original bill.

The original bill set up the *precise* number of incandescent lamps contracted for, to-wit, four thousand; alleged that this precise number and character of lamps were in *excess* of the requisition, *within* the corporate power, necessary and proper for lighting the streets and other public places and public buildings of the city of Jacksonville; and that they were *contracted for* for the *express purpose* and *design* and *intention* of *furnishing lights* to *the inhabitants of said city as aforesaid.*

The prayer, based on, and legally pertinent to the averments, in the original bill, was:

"May it please the court to enjoin the said city and the said Board of Public Works from appropriating

any revenues of the said city or any moneys obtained on the credit of the said city, to. pay for the four thousand incandescent lights and the other parts and portions of the apparatus, attachments and machinery mentioned in the said contract and designed for commercial purposes, or to pay for any engines or boilers or other machinery other than that strictly necessary to furnish motive power for an electric plant of sufficient power and capacity to light the streets of the city of Jacksonville and other public places and buildings of the said city.''

The prayer of the supplemental bill is that the city and Board of Public Works ''may be restrained by the injunction of this honorable court from engaging commercially in the business of electric lighting, and may be restrained and enjoined from furnishing electric lights or power to persons, either natural or artificial, or private residences or business houses.''

The court below, upon the facts set up in the original bill, as a basis for the relief prayed and quoted above, which facts were admitted by the city and the board, denied the motion—denied the temporary injunction for *any* and *all* the purposes prayed. It is inconceivable that the denial of this action had any legal predicate other than that the city *had the power* to purchase these incandescent lamps, for the.purpose of furnishing lights to individuals, as the defendants admitted they intended to do. That this proposed use was apart from, and independent of, lighting the streets. public places and public buildings, was conceded by the pleadings.

It is inconceivable, if the city had the power to purchase these lamps for this avowed purpose, it has not the power to *use* them for this avowed purpose.

It is no more a diversion of the city funds, in which the complainant as a taxpayer is interested, for the city to *use* these lamps in furnishing lights to individuals, than it was to *purchase* them.

The right of the complainant is equally assailed, is equally relievable by injunction, whether this diversion is accomplished by the *purchase* of the incandescent lamps for distributing electricity by sale to individuals, as it is by the *use* of such lamps in distributing by sale electricity to individuals.

In either case, and equally, it is the want of corporate power to do the thing contemplated that furnishes the basis of complainant's equity.

But in degree, the case of the *purchase*, the power being wanting, creates the more intolerable hardship. The purchase having already been consummated—the money having been already diverted from its purpose —the pecuniary *interest* of the *tax-payer* is *promoted* by the application of the lamps thus purchased to the production of revenue. But of course, the pecuniary interest of the complainant is not as a tax-payer, is not the interest he shares with the other tax-payers in whose ostensible name the suit is brought. He rescues *himself* from that dilemma; how he rescues the "other tax-payers" for whose use he brings the suit, he does not say. But he rescues himself, by unblushingly declaring that the *proposed use* of these incandescent lamps brings the city of Jacksonville, designated as "a branch of the government," "into competition with your orator chartered for the specific purpose of furnishing electric lights and power and engaging commercially in the electric lighting business." If there was a diversion of the city funds in which complainant was interested as a tax-payer, it was in the

*purchase* not in *use* of the plant. It is not alleged the plant will be operated at a loss to the city.

The complainant, not avering that he would suffer a loss in an increased burden as tax-payer, by reason of the alleged commercial use of the plant, shows no equity to an injunction. 1 Spelling, sec. 677.

The counsel for appellant insist that the adjudications, as to the power of a municipality to supply to its inhabitants electricity, from its plant already established to light its streets, public places and public buildings, are conflicting—that the authorities are for and against the existence of the power.

No adjudication has been cited by them, or found by our researches, which denies to a city the power to supply to its inhabitants electricity from its established electric plant, other than the South Carolina case, reported in 11 S. E. Rep. 434, S. C. 33 S. C. 1. We concede that this case does hold that "the *purchase* by the City Council of an electric plant, for the purpose of lighting the streets of the city, *and* also supplying electric light to private houses and business buildings is *ultra vires* as being outside the *police* powers of the city."

The provisions of the charter of Greenville, S. C., thus adjudicated to be insufficient to confer the power to make such a purchase, are found in sec. 12, and sec. 19 of the charter amended in 1885—19 St. 106. And the question decided was "whether under the aforesaid provisions of the act" quoted in terms in the opinion, "the City Council had the power to purchase, own and operate, at the expense of the city, an electric light plant for the double purpose of lighting the streets of the city, and providing for incandescent lights to individuals for the interior of private residences and business offices and purposes."

It will be observed the court argued, *these* provisions "did not give the power to purchase the plant in express words. It does not so give even the power to light the city, but we may assume that this latter power may be fairly implied from the grant of the police power."

A comparison of these provisions of the charter of Greenville with the provisions of the charter of Jacksonville, herein analyzed, renders wholly inapplicable to the case at bar the reasoning and conclusion of the court in the case cited. So the exigencies of our case do not require us to controvert either its reasoning or the conclusion of the court. But this court will find that its reasoning and authority have been repudiated.

When this decision was rendered, in 1888, the science of electricity in its adaptations "by which the health, convenience and comforts of the residents of cities are directly affected," laid down as tests of municipal purposes in Greeley vs. City of Jacksonville, 17 Fla. 174, was very imperfectly, as contrasted with its present applied utility, developed.

Indeed the incandescent, as distinguished from the arc, light was regarded as unsuitable for street purposes. This is evident from the opinion of the court. It says: "The uncontradicted testimony was that the *incandescent light is not suitable for lighting the public streets.* We are therefore unable to agree with the Circuit Judge when he said, that if the city, from the same plant, can provide incandescent light to private residences and places of business for compensation, and thus make the system in part at least self sustaining, economy and good business management should sustain the transaction." "We can not so hold as to the purchase of so much of that plant as furnished the incandescent light for use in the interior of

JUNE TERM, 1895. 253

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

private residences and places of business, which can not properly be included within the power to light the streets of the city."

Of course, if the uncontradicted testimony that the incandescent light is *not* suitable for lighting the public streets, had been contradicted by the every day observation that incandescent lights are used for lighting the streets of a city, and almost *exclusively* in the back streets, that arc lights are frequently used in the interior of large business houses—as restaurants, theatres, etc.,—the court, under the reasoning employed, would have sustained the Circuit Judge in his conclusion "that if the city can provide incandescent light to private residences and places of business for compensation, and thus make the system in part at least self sustaining, economy and good business management should sustain the transaction."

Section 2 of Article 1, of the city charter enumerates the general powers of the corporation, and, among other powers conferred, we find that said corporation "may purchase, lease, receive and hold property, real and personal, beyond the limits of the city, to be used for the burial of the dead; for the erection of water works; for the establishment of poor-house, pest houses, houses of detention and correction; for public parks and promenades and for *any other public purpose that the Mayor and City Council may deem necessary or proper;* and may sell, lease or otherwise dispose of such property for the benefit of the city to the same extent as natural persons may." * * *

In the very first article of the city charter, therefore, we find ample power to "*purchase, lease, receive and hold property, real and personal,*" not only for "erection of water works" and other enumerated purposes, but also for "*any other public purpose*" which,

in the judgment of the Mayor and City Council, may be necessary for the inhabitants of the city. The question then presents itself, is the providing individual citizens with electric light for use in their residences and places of business a *"public purpose."* If so, then under this grant of power, if the Mayor and City Council deem it necessary and proper for lights to be so furnished, the corporation has ample power to "purchase, lease, receive and hold" land ("real property") on which to erect buildings in which to establish a plant ("personal property") for furnishing lights.

The authorities, City of Crawfordville vs. Braden, 28 N. E. Rep. 849, S. C. 130 Ind. 149, and Opinion of Justices, 24 N. E. 1084, S. C. 150 Mass. 592, establish beyond all question that the furnishing of light by the city to *individuals* is a public service or "public purpose." It must be conceded, therefore, that the corporation has, under this general power thus conferred, as much authority to erect an electric light plant as it has to erect water works.

Turning now to the article in which the powers of the Mayor and City Council are more specifically enumerated, we find, in harmony with this general power so conferred, that they have power by ordinances "to provide the city with water by water works within or beyond the boundaries of the city; * * * to provide for lighting the city by gas or other illuminating material, or in any other manner;" etc.

We would call attention to the fact that in conferring these two specific powers just above quoted, the Legislature has evidently used the word "city" with the same meaning in each grant of power. If, therefore, to provide the "city" with water, etc., means the

Mayor and City Council have the power by ordinances to provide and supply water to each and every the inhabitants of the corporation in their residences and places of business, Greeley vs. City, 17 Fla. 174; then the grant of power to provide for lighting the "city," etc., is the grant of authority to provide for and supply to each and every the inhabitants the means of lighting their residences and places of business with "gas or other illuminating material, or in any other manner," to-wit, by electricity. The "city" includes private as well as public residences, streets, etc. The former includes many times the greater part of the "city;" and authority to light the "city" includes the whole, i. e., all its parts, private as well as public buildings.

This view is enforced by the fact that the Mayor and City Council are further specifically authorized to "make appropriations for lighting the streets and public buildings." If the "city" in the preceding grant of power is to be restricted in meaning to the "streets and public places" in the limits of said corporation, what necessity was there for the latter grant of power? None whatever. But if the broader and more sensible interpretation hereinbefore suggested is accepted, we can readily see the necessity for the second grant of power.

The Mayor and City Council may, under the authority conferred by the first grant, make provision for securing light for the inhabitants of the city in their residences and places of business; and yet, without the second grant of power, the streets and public places may be enveloped in darkness. Or, on the other hand, the Mayor and City Council may provide for keeping the streets and public buildings so brilliantly illuminated that night would seemingly be

256            SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

turned into day; and yet, the inhabitants would be left to their individual resources to provide light for their homes and places of business.

The Mayor and City Council can provide for lighting the "city," either by the corporation itself erecting gas works or an electric light plant and furnishing gas or electric lights to the inhabitants, or they can by ordinance confer upon some private individual or private corporation the privilege of erecting the necessary plants and furnishing the light to the inhabitants of the city. If the first plan were adopted, as of course the streets and public buildings of the municipal corporation would be lighted without exercising the power of "making appropriations" therefor specifically. But suppose, as in fact it has been done up to the present time, the Mayor and City Council deem it best and proper to "provide for lighting the city" by conferring upon some private corporation the right and privilege of erecting gas works and electric plants and of using the public streets to enable it to carry its product, either gas or electricity, to the consumer, the case would be different. The municipal corporation not itself owning the motor power of lighting the public streets and public places, would have to secure the lighting thereof by contract with those owning the motor power; and, under such circumstances, we can readily perceive the necessity for the second grant of power to "make appropriations for lighting the streets and public buildings."

In Smith vs. Mayor, 12 S. W. Rep. 924, S. C. 88 Tenn. 464, the identical clause "to provide the city with water by water works within or beyond the boundaries of the city," in the charter of the city of Nashville, from which source the provision in our charter was taken, was construed, and the court said: "Here

JUNE TERM, 1895. 257

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

the first clause, 'to provide the city with water by water works,' is very broad and comprehensive, and was obviously intended to authorize the corporation to furnish the inhabitants with water. Having accepted the charter, and undertaken to exercise authority in the manner detailed by the witness, it can not be held that the city in doing so is engaging in a private enterprise, or performing a municipal function for a private end. It is a use of corporate property for corporate purposes.''

This language, it seems to us, is just as applicable to the clause, ''to provide for lighting the city by gas or other illuminating material, or in any other manner;'' and such application would be supported by the same reasoning.

Again: Section 10 of Article 5 of the charter lends support to the construction contended for. This section reads: ''The Board (Board of Public Works) shall have exclusive power to *organize and control* the fire department, the water works and its appurtenances, the gas and *other illuminating works of the city*, and its jails and houses of correction and detention.''

The expression ''other illuminating works'' presupposes the existence in fact of such works of the city, or the municipal capacity to establish them. Here the organization and control of ''gas and other illuminating works of the city,'' is brought into close relation with the fire department and the water works, as legitimate functions of municipal government undoubtedly intended to be exercised for the benefit of each and every the inhabitants of the city, and the benefits to be derived from which no sane man would seek to con-

258 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

fine to public property owned exclusively by the corporation.

The present city was, in 1887, formed by uniting the incorporated cities of Jacksonville, LaVilla and Fairfield, and the populous territories known as Brooklyn and Riverside, into one city. This territory thus added to the old city of Jacksonville was not provided with fire protection, water works, etc. It was, therefore, provided in the charter of the new city, sec. 5 of Article XII, "No property in territory added to said city by said bill shall be subject to special taxation for water works or fire protection or sewers until such improvements respectively shall be extended to such property; *Provided, however,* That in the event of said city issuing bonds for sanitary works, the extension of the water⁹ and sewer systems, and *other needed improvements,* all property within the city limits shall be liable to be taxed for the payment of the principal and interest of said bonds," etc.

In Linn vs. Borough, 28 Atl. Rep. 842, S. C. 160 Pa. St. 511, the court held in a case remarkably similar to this, that an act authorizing a municipal corporation to manufacture and supply electricity at reasonable rates to its inhabitants, provides for a public service, and violates no constitutional provision. The act is entitled—"An act to authorize any borough to manufacture electricity for commercial purposes for the use of the inhabitants of said borough and for this purpose to erect, purchase or condemn electric light plants, etc."

18 N. W. 236, S. C. 52 Mich. 499: A gas company is a corporation in the enjoyment of certain rights and privileges under the State statutes and city charter and is bound to furnish the citizens with gas in localities where its pipes extends, under reasonable condi-

tions.   This is on the postulate that the supplying of gas is a local and not a commercial function.

See to same effect Fleming vs. Montgomery Light Co., 18 So. Rep. 618; Spaulding vs. Lowell, 23 Pick. 71-80: "It was further contended in the present case, that even if the town had authority to assess money for building a market house yet that would not justify the present tax, because part of the building was appropriated to other objects.   If this had been a colorable act, under the pretense of exercising a legal power, looking to other objects beyond the scope of the principal one, it might be treated as the abuse of power, and a nullity.   But we perceive no evidence to justify such a conclusion, in the present case.   The building of a market house was the principal and leading object, and every thing else seems to have been incidental and subordinate.   We can not therefore say that it was such an excess of authority as to invalidate the acts, which they might rightfully do.   As to the size and other circumstances of the building, if the accomplishment of the object was within the scope of the corporate powers of the town, the corporation itself was the proper judge of the fitness of the building for its objects, and it is not competent in this suit to inquire whether it was a larger and more expensive building, than the exigencies of the city required."

Gale vs. Kalamazoo, 25 Mich. 344, quoted in Ledwith case, 26 Fla. 193:   "And the same rule will hold good where, as in the case before us, the premises are leased."

State vs. Hamilton, 25 N. E. Rep. 935, S. C. 47 Ohio St. 52.   City of Hamilton, 12,000 inhabitants, bonded for $150,000 for gas works.   Declined to say whether for commercial purposes.   Upheld.

260        SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

The same case came up before the Federal Court, 37 Fed. Rep. 852. The gas company sought an injunction, says the judge in denying it, p. 838: "The right of complainant to furnish gas to citizens and other private consumers is not attacked nor threatened. All that is done is the refusal of the city to contract for or receive or pay for its own use, and the declaration of its intention to erect works and enter into competition with the complainant for the supplying of gas for private consumption, and each of these things it has a right to do. * * * Specific authority was given the city to supply gas to its citizens, only in case it had to condemn an existing private company's work for failure to comply with regulations. Here it had built its own, instead of condemning.

Crawfordville vs. Braden, 33 N. E. Rep. 849, S. C. 130 Ind. 149. Sec. 794 provides that common council shall have power to light the streets and public places with electric light, and any contract with individuals or corporations for supplying such lights. Sec. 795 provides for the erection in the streets of necessary poles and appliances therefor. Sec. 796 authorizes the granting to individuals or corporations the right to supply inhabitants with light; 798 provides for the appropriation of lands and right-of-way by corporations engaged in lighting the city or the public and private houses for the inhabitants with electric light— held: A municipality has authority to erect and operate the necessary buildings and machinery to furnish light to its inhabitants, not only in its public places, but in private houses and places of business.

Held further—Municipalities have inherent power independent of statutory enactment, to furnish light for their streets and public places.

JUNE TERM, 1895.    261

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Argument.

This case is reasoned out independent of any statute. After first showing the necessity of light to the security of life and property in a city, and that it is for the city council in the exercise of its discretion to select the kind of light to be used, as also to provide the necessary plant, etc., that it is not entering into commerce to supply individuals, seeing that the electricity must be consumed where produced (thus distinguishing it from the Massachusetts case), the court continues: The córporation possessing as it does the power to generate and distribute  *   *  electricity for its streets, we can see no good reason why it may not also furnish for individual use the incandescent light. To do so is in our opinion a legitimate exercise of its police power for the preservation of property and health." It is further emphasized that the use of incandescent lights in private houses is a safeguard against conflagration.

"The city of Jacksonville has, under its charter, the power to issue bonds for municipal purposes. The drainage of creeks, swamps and ponds around the city, the laying of streets, and the construction of sewers and water works, are methods by which the health, convenience and comfort of the residents of the city are directly affected, and are municipal purposes. Greeley vs. City of Jacksonville *et al.*, 17 Fla. 174.

Judge Shiras, in Thompson vs. City of Newton, 42 Fed. Rep. 723, says: "It has been the uniform rule that a city, in erecting gas works or water works, is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use."

It seems to us that, looking at the city charter as a whole, doubt cannot for a moment be entertained as to

the full and ample authority given to the city government to supply light to the inhabitants of the city.

MABRY, C. J.:

The motion made by appellant in this court involves its power to grant a temporary injunction pending an appeal in a case where such injunction had been refused by the Circuit Court. If this court had such power, it must be because of its authority to issue all writs necessary or proper to the complete exercise of the jurisdiction conferred on it by the Constitution in other matters than those in which it exercises original jurisdiction. The case of Cohen vs. L'Engle, 24 Fla. 542, 5 South. Rep. 255, does not expressly affirm the jurisdictional authority of this court to grant the injunction asked for, and we are without a direct adjudication on the point in this State. An examination of this question has led to an investigation of the entire case presented by the record, and as it has been argued by counsel, and we have reached a conclusion thereon, we have decided to dispose of the appeal on its merits, without reference to the power of the court to grant a temporary injunction pending the appeal.

The question presented on the merits is whether the city of Jacksonville has the power to erect and maintain an electric plant of sufficient power and capacity to light the streets and public places of the city, and at the same time supply from said plant the inhabitants thereof with electric lights for their private residences and business houses. The original bill alleged that the city, through its Board of Public Works, had failed to comply with the law regulating the letting out of contracts to the lowest bidder, in awarding the contract for the erection of the plant in question, but

this is denied by the answer, and it is not contended here that appellant was entitled to an injunction on this ground. The supplemental bill would seem to go to the extent of alleging that the city had declared its purpose to engage in the manufacture and sale of electricity for commercial purposes without reference to its use by the inhabitants of the city, but there is nothing to show a purpose to dispose of electric lights to any other persons than the inhabitants of the city for use in their private residences and houses, and the question presented is as we have stated it. We have been unable to find any authorities bearing directly on the question involved in the merits of this case than those cited in the briefs of counsel, and the decisions cited speak of the paucity of adjudications on the point. The general rule stated by Judge Dillon (sec. 89, vol. 1 Municipal Corporations) is recognized as a correct summary of the decisions on the question. The author states the rule as follows: "It is a general and undisputed proposition of law that a *municipal corporation possesses and can exercise the following powers, and no others:* First, those granted *in express words*; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers

granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute." The same author says (sec. 91) that "the rule of strict construction of corporate powers is not so directly applicable to the ordinary clauses in the charter or incorporating acts of municipalities as it is to the charters of private corporations; but it is equally applicable to grants of powers to municipalities and public bodies which are out of the usual range, or which may result in public burdens, or which, in their exercise, touch the right to liberty or property, or as it may be compendiously expressed, any common-law right of the citizen or inhabitant." While a strict construction should be applied to the grant of power, yet if a power is necessarily or fairly implied in or incident to those clearly given, it is not to be impaired by a strict construction. Kyle vs. Halin, 8 Ind. 84. In speaking of the powers of municipal corporations, it is said in City of Bridgeport vs. Housatonic R. R. Co., 15 Conn. 475: "They may *exercise all the powers within the fair intent and purpose of their creation which are reasonably proper to give effect to powers expressly granted.* In doing this they must (unless restricted in this respect) have a choice of means adapted to ends, and are not to be confined to any one mode of operation." In construing a charter giving to a city the right to pass ordinances for the prevention and suppression of fires, and to appoint and remove fire wardens, and to prescribe the powers and duties of such fire wardens and of fire engineers and firemen, and to raise money to support the fire department, it was held that although no express grant of power was conferred to purchase engines and apparatus, yet such power was necessarily or fairly implied as incident to the power expressly given.

Green vs. City of Cape May, 41 N. J. L. 45. The charter of the city of Greenville, construed in the case of Mouldin vs. City Council of Greenville, 33 S. C. 1, 11 S. E. Rep. 434, provided that the council might purchase, hold, possess and enjoy any estate, real personal or mixed, and sell, lease, alien and convey the same, provided that it did not exceed at any time $100,000, and also to make and establish all such rules, by-laws and ordinances respecting roads, streets, markets and police department of the city, and the government of the city, as should appear necessary and requisite for the security, welfare and convenience of the city for preserving health, life and property, and securing the peace and good government of the same. The further power was given to levy taxes sufficient to discharge and defray all expenses of carrying into effect the ordinances, rules and regulations established as provided, with the limitation that the tax should not exceed seventy-five cents upon every one hundred dollars of real and personal property assessed. The city was also authorized to borrow money for the public use of the corporation by issuing bonds bearing a certain rate of interest, and not to exceed $100,000. It was held that the city had the express power to purchase, and the implied power to operate an electric light plant, so far as it is used for lighting the streets and public buildings of the city, but so far as it was used for furnishing light to private residences and places of business at a compensation, it was not for the public use of the corporation, and therefore its purchase and maintenance to that extent were *ultra vires*. Aside from the express power to buy and hold property the city had only the powers granted by what is usually called the "general welfare clause" in municipal charters. After referring to the

266 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Opinion.

rule announced by Judge Dillon, given above, the court say: "Now, tested by this principle, so clearly stated, how does the matter stand? Clearly the charter does not give the power to purchase this plant in express words. It does not so give even the power to light the city, but we assume that this latter power may be fairly implied from the grant of the police power." Under a statute giving cities power to establish and maintain electric light plants, or to authorize the erection of the same, upon a majority vote of the city, and to issue bonds for the purpose of establishing electric plants, the total amount not to exceed five *per cent.* of the assessed taxable property within the city, Judge Shiras held that the city had the power to erect an electric plant for the purpose of furnishing light to its inhabitants in their stores and houses, as well as for lighting the streets and public places of the city. He says that it had been "the uniform rule that a city, in erecting gas works or water works, is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use; and the statutes of Iowa now place electric light plants in the same category." Thompson-Houston Electric Light Co. vs. City of Newton, 42 Fed. Rep. 723; S. C. 3 American Electrical Cases, 507. An Indiana statute conferred upon municipalities the power "to light the streets, alleys and other public places" of cities and towns with electric light or other form of light, and to contract with any individual or corporation for lighting such streets, alleys and public places with electric light or other form of light, on such terms and for such times, not exceeding ten years, as might be agreed upon. Other provisions in the act authorized the granting to any person or corporation the right to

erect and maintain the necessary fixtures for supplying electric light to the inhabitants of the municipality, but it was conceded by the court, in the case of City of Crawfordville vs. Braden, 130 Ind. 149, 28 N. E. Rep. 849, that no provision was made in terms for the municipality to supply electric light to its inhabitants. It would seem from the terms of the act in conferring power upon the municipality to light the "streets, alleys and other public places," that it was the purpose of the legislature to confine the corporation to such use in supplying electric light, but the court held that the corporation had the right to furnish the inhabitants light for their private residences and business houses, as well as lighting the streets and public places of the city. It appears that this right is based, in the case cited, upon the general police power of the city. The charter of the city of Nashville conferred the power "to provide the city with water by water works, within or beyond the boundaries of the city, and to provide for the prevention and extinguishment of fires, and organize and establish fire companies." The right of the city to establish water works, and in addition to making provision for the extinguishment of fires, to furnish water to the inhabitants, was affirmed in the case of Smith vs. City of Nashville, 88 Tenn. (4 Pickle) 464, 12 S. W. Rep. 924. The act passed on in the case of Linn vs. Chamberburg Borough, 160 Penn. St. 511, 28 Atl. Rep. 842, expressly authorized any incorporated borough to manufacture electricity for commercial purposes for the use of the inhabitants of said borough, and the constitutional power of the legislature to confer such right was recognized. The court said: "In view of the fact that electricity is so rapidly coming into general use for illuminating streets, public and

private buildings, dwellings, etc., why should there be any doubt as to the power to authorize such corporations to manufacture and supply it in like manner as artificial gas has been manufactured and supplied?'' A statute in Kansas gave to cities of the second class authority to provide for and regulate the lighting of the streets, and to make contracts with any person, company or association for such purpose. The city of Hiawatha entered into a contract with the General Electric Company to construct a plant to be used by the city exclusively for the purpose of lighting the public streets, without any intention to furnish lights to private citizens or to use of the same for any private purpose. The court held that the city had the right to construct the plant. State vs city of Hiawatha, 53 Kansas, 477, 36 Pac. Rep. 1119. The right to furnish to individuals for use in their private houses was not involved or considered. It was enacted in Ohio that "the council of any city or village shall have power, whenever it may be deemed expedient and for the public good, to erect gas works at the expense of the corporation, or to purchase any gas works already erected therein." Former statutes gave municipalities the right to contract with gas companies to supply cities with gas, and the right of a city to erect gas works therein without any avowal of the purpose for which they were erected, although a contract had formerly been made with a gas company to supply gas, was affirmed in the case of State ex rel. vs. City of Hamilton, 47 Ohio St. 89, 25 N. E. Rep. 935. The power of the Legislature to authorize incorporated cities and towns to erect and maintain electric plants to light the streets and other public places of the municipality, as well as supply light to private individuals, is expressly stated in Linn vs. Chambersburg Borough, supra, and the

JUNE TERM, 1895.                    269

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Opinion.

opinion of the Justices, 150 Mass. 593, 24 N. E. Rep. 1084.

The authority of the city of Jacksonville to erect the electric plant in question, and in addition to lighting the streets and public places therein, to supply the inhabitants light for their private residences and houses, must depend upon the charter act of 1887, Chapter 3775. The act of 1893 (Chapter 4239) gave the right to the city to issue bonds under conditions therein stated to refund the bonded indebtedness of the city, and for such other municipal purposes as might be provided by ordinance in submitting the question of the issuance of the bonds to a vote of the people. The issue of $75,000 of bonds for the erection of an electric plant having been carried, the city undertook the construction of the plant. Unless the erection of the plant was a municipal purpose within the meaning of the charter powers of the city, it could not be created at public expense. The act of 1887 provides that the city "may purchase, lease, receive and hold property, real and personal, within said city; and may sell, lease or otherwise dispose of the same for the benefit of the city; and may purchase, lease, receive and hold property, real and personal, beyond the limits of the city, to be used for the burial of the dead; for the erection of water works; for the establishment of poor houses, pest houses, houses of detention and correction; for public parks and promenades, and for any other public purpose that the Mayor and City Council may deem necessary or proper; and may sell, lease or otherwise dispose of such property for the benefit of the city to the same extent as natural persons may." Among the powers conferred upon the City council are the following: "To make regulations to secure the general health of the inhabitants and to prevent and remove nui-

sances; to provide the city with water works within or beyond the boundaries of the city; to provide for the prevention and extinguishment of fires and to organize and establish a fire department; to provide for lighting the city by gas or other illuminating material, or in any other manner; * * to make appropriations for lighting the streets and public buildings, and for the erection of all buildings necessary for the use of the city; * * to pass all ordinances necessary for the health, convenience and safety of the citizens, and to carry out the full intent and meaning of this act, and to accomplish the object of this incorporation." Among the limitations upon the City Council are the following: "The Mayor and City Council are forbidden to make any appropriations of money or credit in the way of donation, festivities, pageants, excursions or parades, nor shall they be authorized to subscribe for stock in any railroad company or in any other corporation, or give or lend any money, aid or credit to any person or corporation whatever, and they are hereby prohibited from employing or appropriating the revenues and taxes in any other manner than for purposes strictly municipal and local and according to the provisions of this act." Under the provisions regulating the duties of the Board of Public Works, that body is given exclusive control over the lighting of all such public places as may be deemed necessary, and "shall have exclusive power to organize and control the fire department, the water works and its appurtenances, the gas and other illuminating works of the city, and its jails and houses of correction and detention."

There can be no doubt about the power of the city of Jacksonville to erect and maintain at public cost an electric plant of sufficient power and capacity to light

the streets and public places in the corporation. Counsel for appellant do not insist here that the city does not possess such power, but the contention is, that no power exists to erect and maintain such plant for the additional purpose of supplying the inhabitants of the city with electric light for use in their private residences and houses. Under a strict construction, as applied in the South Carolina decision, the city would have the power, even under the general welfare clause, to erect and maintain an electric plant to supply light for the streets and public places of the city. The grant of power to the city of Jacksouville to provide for lighting the city by gas or other illuminating material, or in any other manner, is clear and explicit, and this carries with it the power of choice of means to accomplish the end. Should this power be construed into a right to light the streets and public places of the city, but not to supply the inhabitants thereof with light for use in their private houses? The power of lighting the city is given in connection with the powers of providing the city with water and the establishment of fire departments for the prevention and extinguishment of fire. The Tennessee court construed a clause in the charter of the city of Nashville, similar to the one in the Jacksonville charter into a power to supply water not only for the public use of the city, but for private use by the inhabitants. The statute in Iowa simply gave the power to cities to erect electric plants without designating the purposes for which light might be generated, and it was held that it could be furnished by the city to its inhabitants for private use in their residences. The Indiana decision clearly sustains the power claimed by the city of Jacksonville in this case; and if the South Carolina case can be considered the other way, the preponderance of ad-

272 SUPREME COURT.

Jacksonville Elec. L. Co. v. City of Jacksonville et al.—Opinion.

judication seems to be in favor of sustaining the power claimed in the case before us. The South Carolina court did not have before it a statute like ours, and we are of the opinion that a fair construction of the grant "to provide for lighting the city by gas or other illuminating material, or in any other manner," will authorize the erection and maintenance of an electric plant not only for lighting the streets and public places of the city, but also for supplying, in connection therewith, electric light for the inhabitants of the city in their private houses. The power given is to light the city, and the connection indicates that the Legislature was conferring powers for the benefit of the people generally of the city. The restrictions contained in the fifth section prohibiting the appropriation of the revenues of the city in any other manner than for purposes strictly municipal and local and according to the provisions of the act, do not curtail the right, if given in the grant of the power mentioned. Express authority is given to appropriate revenue to accomplish the purposes of the act. The city of Jacksonville is a municipal body, and, of course, all the powers conferred upon it should be construed with a view of carrying out its creation as a public agency of the State. None of its grants should be held to confer powers disconnected with municipal purposes. That the supplying the inhabitants of a city with electric light is such a municipal purpose as will authorize its delegation by the Legislature to municipal bodies is sustained by all the authorities we have found. To the extent of supplying light to the inhabitants of a city for use in their private houses, we discover nothing that can not, in the light of the decisions, be called a municipal purpose, and

beyond this we are not called upon to go, and do not go in this decision.

It is not insisted here that the dismissal of the bills, independent of the refusal to grant the injunction prayed for, was error. No other relief was asked for except the injunctions.

Our conclusion is, that the decrees appealed from should be affirmed, and it will be so ordered.